# CHARLESTON.

### CONNOLLY v. BOLLINGER.

### Decided February 8, 1910.

1. BREACH OF MARRIAGE PROMISE—*Dates of Promise and Request for Performance—Sufficiency of Allegations.*

   In a count on a promise to marry generally in a declaration in *assumpsit* for breach of the contract, the dates of the promise and request for performance need not be so stated as to show the lapse of a reasonable time between them for performance. Being immaterial and merely formal, the dates may be laid under a *videlicet*, and the proof may vary therefrom.

2. TRIAL—*Instructions—Incomplete Charge Cured by Others.*

An incomplete instruction, correct as far as it deals with its subject matter, is perfected by the giving of another for either party, supplying the omitted matter.

3. BREACH OF MARRIAGE PROMISE—*Requisites of the Contract—Express or Formal Engagement.*

Indefinite and indirect conversation between the plaintiff and defendant in an action for breach of a promise of marriage, capable of being interpreted as relating to marriage and aided by a course of conduct, indicative of betrothal, is sufficient to sustain a finding of the marriage contract, without proof of an express or formal engagement.

4. SAME—*Immoral Consideration—Question for Jury.*

Proof of indulgence, by the parties to a contract of marriage, in illicit sexual intercourse at the time and place of the making of the promise, does not, as matter of law, preclude a verdict in an action for breach of the contract.

5. SAME—*Immoral Consideration.*

Though a promise of marriage, made in consideration of the allowance of illicit sexual intercourse, is void for illegality and immorality of the consideration, what the consideration was is a question for the jury, when the evidence concerning it is inconclusive, but tends to prove mutual promises to marry, as well as immoral conduct at or about the same time.

6. SAME—*Accrual of Action—Renunciation of Contract.*

Renunciation of a contract of marriage alters the status of the parties *ipso facto* and a right of action accrues at once.

7. SAME—*Renunciation of Contract—Institution of Action—Effect of Subsequent Offer of Performance.*

After the injured party in such case has signified intention to treat the contract as terminated, except for the purposes of an action for damages for the breach thereof, by the institution of such an action, a subsequent offer of performance by the other party does not bar recovery.

Error to Circuit Court, Ritchie County.

Action by Coro O. Connolly against M. L. Bollinger. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*S. A. Powell, Adams & Cooper,* and *R. F. Kidd,* for plaintiff in error.

*R. S. Blair* and *S. O. Prunty,* for defendant in error.

POFFENBARGER, JUDGE:

The first error assigned on this writ is the overruling of the demurrer to the declaration. The action is for breach of a promise to marry, and the declaration, containing a single count, sets up a promise to marry generally in these words: "That heretofore, to-wit: on the ——— day of ——— 1906, at the county aforesaid, in consideration that the plaintiff, being then and there sole ·and unmarried, at the special instance and request of the said defendant, had then and there undertaken and faithfully promised the said defendant to marry the said defendant, he the said defendant undertook and then and there faithfully promised the said plaintiff to marry the said plaintiff." This is followed by an averment of the plaintiff's subsequent singleness and readiness and willingness to marry the defendant, and a request that the defendant comply with his promise, after the lapse of a reasonable time from the date of the making thereof. The time of the request is averred to have been the ——— day of October, 1906. The criticism is that the declaration fails to show just what time did elapse between the date of the making of the promise and the request, or between the date of the making of the promise and that of the institution of the action, so that the court could see whether or not it was reasonable. As the count follows the form given in 2 Chitty's Pleading (11th Am. Ed.) p. 322a, and the particular dates are not material, we think the position taken by the attorneys for the plaintiff in error is untenable. The averment of the lapse of a reasonable time is one of fact and would be sufficient to cover the alleged defect, if it constituted a ground of demurrer, in the absence of any allegation curing it. What is a reasonable time, under the circumstances of any particular case, is generally a question for the jury, and, therefore, clearly one of fact, just as negligence is a question of fact when it pertains to the manner in which an act has been performed. In an action for negligence, it is only necessary to state the instrument or means by which the injury was effected and then say the act was negligently done. *Bralley* v. *Railway Co.*, 66 W. Va. 278 (66 S. E. 653). In the case of a promise of marriage, the reasonableness of the time within which the promise is to be performed obviously depends upon the circumstances of the

particular case.  A reasonable time, under some circumstances, would be unreasonable under others. and *vice versa*.  Hence, sufficient latitude must be allowed by the declaration to let in all the facts, and the plaintiff cannot be tied down to the allegation and proof of particular dates.  Such a rule would prove to be very embarrassing to the plaintiff without any corresponding advantage to the defendant, other than that of having the plaintiff at a disadvantage.  It would not only subserve no useful purpose, but would, on the contrary, work injustice.  Ordinarily, the date of the contract or injury on which the action is based is not material.  It is averred simply as a matter of form, and we think cases of this kind fall within that general rule. *Beckwith* v. *Mollohan*, 2 W. Va. 477; *Tabb* v. *Gregory*, 4 Call. 225; 1 Chitty Pl. (11th Am. Ed.) 257; *Martin* v. *Patton*, 1 Litt. (Ky.) 234; *Prescott* v. *Guyler*, 32 Ill. 312.  The further contention that the promise is stated by way of recital is not borne out by an inspection of the declaration.  The allegation is direct and positive and in the usual form.

The second and fifth assignments of error relate to the sufficiency of the evidence and the validity of the contract, if proven, one being founded on the refusal of the court to direct a verdict for the defendant and the other upon its refusal to set aside the verdict for $575.00.  The charge of insufficiency is, that the intentions of the parties were not serious, and, of invalidity, that the promise of marriage was made in consideration of the allowance of illicit sexual intercourse.  The plaintiff herself was the only witness who testified to anything material in the case.  She detailed her relations with the defendant, showing that he had waited upon her for a period of five or six years, during the course of which, there were numerous conversations, concerning their marriage, and a long period of illicit intercourse, resulting finally in her pregnancy and delivery of a child, followed by an absolute breaking off of relations with her on his part.  She says he promised in October, 1903, to marry her.  Prior to this promise he had been constant in his attention to her, since the year 1900 or 1901, visiting her every two weeks and sometimes every week and more than once a week.  When cross-examined as to the conversation, respecting marriage, she gave the time and place and the substance of what he said.  As it is urgently insisted that their conversaion did not

necessarily mean marriage and is insufficient to support a finding of a promise to marry, careful consideration thereof is necessary. She stated it as follows:

"A. . He asked me if I wouldn't came to his house and· live with him; his own home and live with him.

Q. Well, what did you tell him? ·

A. I said I didn't know; I told him that he didn't want me and he said yes, he did and just let it go that way.

Q. Then he didn't promise to marry you there did he?

A. Then after a bit he said he would like to have me out to his place; I told him I didn't know, I might come out there some of these days; that was the answer I gave him.

Q. He didn't tell you he wanted you to marry him, did he? '

A. Yes, sir, he did.

Q. Didn't you just say he asked you if you would come to his house and stay there? .

A. He meant to marry me.

Q. Well, you didn't tell him you would marry him on that day, did you?

A. Just as good as told him.

Q. Now, what did you tell him that was just as good as telling. him?

A. That I would later on.

Q. What did Lee say to that?

A. Said he wasn't ready to get married yet. .

Q. When did he say he would be ready?

A. He didn't say; said he had to build a house and have his well drilled; said he had a good deal of work yet to do.

Q. Did you tell him when you would be ready?

A. No, sir, I didn't tell him because I thought we could when he got ready.

Q. When was the next time Lee said anything to you about him and you getting married?

A. The following Sunday, I guess it was; he was out to our place again..

Q. He was out to your place was he?

A. Out at father's, yes, sir.

Q. How long after this first time he promised to marry you?

A. I think it was the next Sunday, or the next Sunday a week.

Q.  Well, what did Lee say to you at that time?

A.  He asked me if I was ready to come live with him again.

Q.  And you told him you weren't ready, did you?

A.  He said he wasn't ready yet.

Q.  How does it come he would ask you if you were ready to go home with him when you say he said he wasn't ready; how do you explain that?

A.  In a joking way, I suppose.

Q.  Oh, just in a joking way?

A.  Yes, sir.

Q.  Did you so consider it at the time?

A.  I didn't consider that he wanted to take me just at the time.

Q.  You considered it just a joke, did you?

A.  I considered he wanted me hereafter.

Q.  At that time you just considered it as a joke, is that right Miss Connolly?

A.  I considered it a truth that he wanted me."

That it was competent for the jury, considering this conversation in connection with the previous conduct of the parties, to find mutual promises of marriage, each in consideration of the other, we have not the slightest doubt, nor is there anything in the contention that the reference by the witness to one jocular remark, made in the course of their conversation, precludes such a finding, since, as pointed out by her in her testimony, this remark related to a particular time and not the entire subject of conversation. The interpretation of the express terms, used by the parties, was peculiarly within the province of the jury, and they had the undoubted right, if they deemed it necessary to summon to their aid the previous, contemporaneous and subsequent conduct of the parties. *Tefft* v. *Marsh,* 1 W. Va. 38; *Hoit* v. *Moulton,* 21 N. H. 586; *Kelley* v. *Highfield,* 15 Oreg. 277; *Wagenseller* v. *Simmers,* 97 Pa. St. 465; *Perkins* v. *Hersey,* 1 R. I. 493; *Wells* v. *Padgett,* 8 Barb. (N. Y.) 323; 5 Cyc. 1012.

Whether the promise was made upon an immoral consideration, the plaintiff's consent to sexual intercourse; was also a question for the jury. There is no suggestion that it was a conditional promise, as, for instance, to marry her if she became pregnant. In the decisions we have examined a good many

cases of that kind have been disposed of. Nor is there a word in all of the plaintiff's testimony which says he promised if she would consent to intercourse. That the immoral conduct entered into the matter at all could not arise otherwise than by way of inference from the fact that the illicit intercourse first occurred at the time and place at which the promise was made. If this fact, standing alone, would justify the inference, it is not to be considered in that light, because the witness's testimony, fairly construed, is to the effect that mutual promises of marriage were made, either previously or coincidentally, and whether the defendant's promise was made in consideration of the plaintiff's promise of marriage, or her submission to intercourse, or both, were questions for the jury. The facts in this case are very similar to those in *Burke* v. *Shaver,* 92 Va. 345, in which the court held the consideration of the promise to be a question for the jury, but reversed the judgment because of the refusal of instructions to the effect that, if the promise was made in consideration of illicit intercourse, it was invalid. Inasmuch as the questions before the court in that case pertained only to rulings made during the course of the trial, such as the giving and refusing of instructions and the admission and rejection of evidence, and did not include the correctness of a verdict, rendered in a trial properly conducted to a final result, it may not be a precedent for the conclusion here expressed; but we have no doubt of the correctness of our position. The evidence certainly affords latitude for the three views we have suggested, and, this being true, it was for the jury to say, which of them accords with the intent, purpose and agreement of the parties.

Plaintiff's instruction No. 1 is complained of because it told the jury that, if they believed from the evidence and circumstances in the case, there was a valid marriage contract and a breach thereof by the defendant, they must find for the plaintiff. This instruction is good as far as it goes, although it does not define a marriage contract nor state the elements thereof for the information of the jury. Incompleteness is the only feature that can be urged against it. This was supplied in instructions Nos. 1 and 3, given for the defendant, telling the jury that, in order to warrant a verdict for the plaintiff, they must find she had proved, by a preponderance of the evidence, a mutual promise to marry between herself and the defendant, and that

she could not recover if they should find the promise had been made in consideration of illicit intercourse on the part of the plaintiff. These instructions told the jury not only what would constitute a valid marriage contract, but also what would invalidate the contract, if made in a certain way. In view of this, a question of law cannot be said to have been submitted to the jury. That an incomplete instruction, perfected by additional instructions, is neither improper nor cause for reversal, is too well settled to require the citation of authority.

Having obtained from the plaintiff an admission, in her evidence, of an offer, on the part of the defendant, to marry her, after the institution of her action, the defendant requested an instruction to the effect that, if the jury believed such offer had been made and she had not previously signified her intention to end the engagement, there could be no recovery, except for costs. An exception was taken to the action of the court in refusing this instruction. There is proof of a positive and emphatic refusal by the defendant to marry the plaintiff, prior to the institution of the action. It was an absolute repudiation of the contract. Under all the authorities, this justified the plaintiff in treating it as having been violated and suing for damages for the breach thereof. Thereafter she could elect to treat the contract as still subsisting for no other purpose than to afford her means of recovering damages for its violation. She was not bound to perform, after flat refusal of performance on his part. A contract of marriage is peculiar and distinguishable from contracts in general in this, that it establishes, at once and before the consummation of the marriage, a relation of confidence between the parties and alters their status. From the moment the contract is made, the parties are betrothed. The breach thereof, by renunciation or repudiation, *ipso facto* destroys the relation so established, alters the situation of the parties and works injury. In *Frost* v. *Knight*, L. R. 7 Ex. 111, Chief Justice Cockburn said: "Indeed, the contract of marriage appears to afford a striking illustration of the expediency of holding that an action may be maintained on the repudiation of a contract to be performed *in futuro*. On such a contract being entered into, not only does a right to its completion arise with reference to domestic relations and possibly pecuniary advantages, as also to the social status accruing on marriage,

but a new status, that of betrothment, at once arises between the parties. This relation, it is true, has not, by the law of England, the same important consequences which attached to it by the canon law and the law of many other countries. Nevertheless, it carries with it consequences of the utmost importance to the parties. Each becomes bound to the other; neither can, consistently with such a relation, enter into a similar engagement with another person; each has an implied right to have this relation continued till the contract is finally accomplished by marriage. To the woman, more especially, it is all important that the relation shall not be put an end to. Independently of the mental pain occasioned by the abrupt termination of such an engagement, the fact of its existence, if followed by such a termination, must necessarily operate to her serious disadvantage. During its continuance others will naturally be deterred from approaching her with matrimonial intentions; nor could she admit of such approaches, if made; while the breaking off of the engagement is too apt to cast a slur upon one who has been thus treated. We see, therefore, every reason for applying the principle of *Hochster* v. *De la Tour* (2 E. & B. 678) to such a case, and for holding the contract, if repudiated, to be broken, not only in its present, but also in its ultimate obligations and consequences. To hold that the aggrieved party must wait till the time fixed for marrying shall have arrived, or the event on which it is to depend shall have happened, would have the effect of aggravating the injury, by preventing the party from forming any other union, and by reason of advancing age rendering the probability of such a union constantly less." It is also abundantly established that a subsequent offer of performance, after the injured party has signified intentions to terminate it, constitutes no defense to an action for the breach. *Kurtz* v. *Frank,* 76 Ind. 594; *Soughard* v. *Rexford,* 6 Cow. (N. Y.) 264; *Holloway* v. *Griffith,* 32 Ia. 409; *Wood* v. *Hagan,* 13 Ky. L. R. 173. Some of these cases hold that such an offer, after action has been brought, is not ground for mitigation of the damages.

We think the institution of the plaintiff's action, nearly a year before the defendant's offer of marriage was made, sufficiently manifested intent, on her part, to consider the contract terminated, in respect to performance, and, therefore, that it con-

stituted no defense. There is no merit in the contention that he may have thought a reasonable time had not elapsed until the date of this offer. Before the action was commenced, he had completely renounced the contract, saying he would not marry her at all, and as she had accepted the issue, thus tendered, and sued him, his subsequent offer, viewed most favorably, 'was nothing more than an attempt to effect a compromise or an accord and satisfaction. In refusing her request, he had said nothing about time or any other condition.

Perceiving no error in the judgment, we affirm it.

*Affirmed.*