# CHARLESTON

## H. C. Powell Music Co. v. Parkersburg Transfer & Storage Co.

Submitted January 26, 1915. Decided February 16, 1915.

1. BAILMENT—*Duty of Bailee—Protection of Property—"Ordinary Care."*

   A bailee for hire must exercise ordinary care for the protection of the property in his custody, that is, such care as prudent men would ordinarily use toward their own under similar circumstances. (p. 660).

2. SAME—*Action Against Bailee—Ordinary Care—Question for Jury.*

   In an action for damages based on the failure of a bailee to use ordinary care, the question whether care was used is usually one for the jury under all the circumstances of the case. (p. 661).

3. SAME—*Loss of Goods—Proximate Cause.*

   Where goods in bailment are lost in an unprecedented flood, if the exercise of ordinary care on the part of the bailee would have saved them, not the act of God but a failure to use such care is the proximate cause of the loss. (p. 662).

4. TRIAL—*Instructions—Cure of Error.*

   Incompleteness in one instruction may be cured by another, where they are not inconsistent with each other. (p. 663).

5. SAME—*Instructions—Irrelevant Matter.*

   Irrelevant matter in an instruction, not of the character to mislead, will not vitiate the instruction if it is otherwise sufficient. (p. 664).

6. SAME—*Instructions—Repetition.*

   Where instructions already given cover the entire case and properly submit it to the jury, the court may refuse other proposed instructions which would not further aid the jury in reaching a verdict. (p. 664).

7. BAILMENT—*Duty of Bailee—Care Required.*
The care which a bailee takes of his own property is not a standard of his legal duty toward the property of the bailor. (p. 665).

8. SAME—*Loss of Property—Damages.*
. Where the property has been totally lost by the negligence of the bailee, a proper measure of the damages is the fair value of the property to the bailor at the time and place of the loss. (p. 665).

Error to Circuit Court, Wood County.

Action by the H. C. Powell Music Company against the Parkersburg Transfer & Storage Company. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Merrick & Smith,* for plaintiff in error.

*V. B. Archer,* for defendant in error.

ROBINSON, PRESIDENT:

Twenty pianos stored by plaintiff in defendant's warehouse at Parkersburg were caught by the waters of an unprecedented flood in the Ohio River. In this action, upon the charge that the pianos were wholly lost to plaintiff by reason of the failure of defendant to exercise ordinary care to protect the property, plaintiff has recovered a judgment for $3,500.00, from which defendant brings error.

As grounds of the general assignment that the court erred in refusing to set aside the verdict of the jury and grant a new trial, it is submitted; (1) that the verdict was contrary to law and the evidence, (2) that the court erred in the giving and refusing of instructions, and (3) that the verdict was excessive.

Defendant, by taking plaintiff's goods into its warehouse, at a fixed compensation for the storage furnished, became a bailee for hire. This relation imposed the legal duty on defendant to use such care to protect the property as prudent men would ordinarily use toward their own under similar circumstances. Defendant was a warehouseman by trade. In the pursuit of that trade it took plaintiff's goods for keeping. It thereby assumed to use ordinary care for their protection. "Ordinary care means such care as ordinarily prudent men,

75 W. Va.

as a class, would exercise for their own property under like circumstances, or, as it has sometimes been expressed, when applied to such bailees as make a business of keeping property for hire, as depositaries or warehousemen, that degree of care and diligence which may reasonably be expected from ordinarily prudent persons under similar circumstances, or that which business men, experienced and faithful in the particular department, are accustomed to exercise when in the discharge of their duties." 3 R. C. L. 97. Whether defendant exercised ordinary care under all the circumstances of this case was a question for the jury to solve. Their finding that defendant did not use such care was a warranted deduction from the evidence.

It is true that the flood was not expected to rise to the unprecedented height that it did. But it appears that the river rose gradually and steadily, and at last, despite all predictions, gave gradual and steady warning that it was exceeding all previous records. By its going higher, it gave notice that it might still go higher. Thus the guage of danger continued to rise. In the face of all this, could defendant blamelessly take no steps to remove plaintiff's goods to the next floor of the building, where it is conceded there was ample room for them, and to which it was proved they could have been removed beyond danger of injury? What would prudent men do under similar circumstances? Of course, time, place, circumstances, all entered into the question. But considering all these the jury said that ordinary care prompted the removal of the goods to the higher floor. That finding is not contrary to the evidence. The jury were entitled to take into consideration the character of the property of which defendant was the custodian, the threatening danger thereto by the onrising flood, the sufficiency or insufficiency of notice which the same gave defendant for action, the opportunities for defendant to meet the exigencies of the occasion or the want of the same, and other pertinent matters. Out of all these the jury have said that the exercise of ordinary care by defendant under all the circumstances confronting it would have saved the pianos. Whether or not care was exercised by a bailee is generally a question for the determination of the jury. Particularly was it so here, in

75 W. Va.

view of the conflicting facts and circumstances from which the question had to be determined. And who are better qualified to determine such a question than average men, schooled in the affairs and exigencies of ordinary life?

As the jury have determined the fact, it was the failure of defendant to use ordinary care, not the act of God in sending the unprecedented flood, that brought the loss to plaintiff. The flood was the remote cause of the loss; the negligence of defendant the proximate cause. If ordinary human foresight, pains and care had been used, the loss would have been prevented regardless of the flood. Defendant can not charge the flood with that which it could have prevented. *Atkinson* v. *Railway Co.,* 74 W. Va. 633; 82 S. E. 502.

There is no appreciable evidence in the case sustaining the argument of defendant that plaintiff itself was responsible for the care of the property. No contract of bailment appears but an implied one arising from the delivery of the property to defendant for storage in the warehouse. We have observed the legal obligation arising from such relation. No special contract affecting or modifying the ordinary relation of bailor and bailee for mutual benefit is proved. Nor does the evidence sustain the argument that plaintiff undertook to protect the property from the flood, and thereby released defendant of its duty in that regard. It conclusively appears that plaintiff relied on defendant to fulfil the legal duty resting on it as bailee. Until plaintiff had notice that defendant would not fulfil its legal duty to use ordinary care, plaintiff could rest on defendant's fulfulment of that duty. Plaintiff had no such notice until it was too late to do anything availing to save the property. All this is practically uncontroverted.

The instructions given fairly covered the case and properly submitted the law applicable to it. The first three given at the request of plaintiff submitted to the jury the determination of the question whether defendant exercised ordinary care under the circumstances of the occasion, and whether, if there was failure on the part of defendant to use such care, that failure was the proximate cause of the loss of the property. These instructions together with one given for defendant plainly and completely submitted to the jury the

very question on which the determination of liability turned—whether defendant caused the loss by failure to exercise ordinary care under all the circumstances. 'We do not find them susceptible to the criticism made by defendant's counsel.

The fourth instruction for plaintiff was one pertaining only to the measure of damages, as we view it. Read by itself it would perhaps be erroneous for incompleteness. But it was expressly conditioned on the jury's finding from the evidence that plaintiff was entitled to recover. Thus the other instructions which preceded it and prescribed the rule by which plaintiff might be found entitled to recover, were brought into and made a part of this one. It virtually told the jury that if by the preceding instructions the case was for plaintiff because they found defendant had not used ordinary care, then the measure of damages was the injury which the evidence showed the pianos to have sustained by the flood from which defendant negligently failed to remove them. Then the instruction defined the measure of damages in case the injury amounted to a total loss of the pianos. It told the jury that if they should find from the evidence that the pianos were *destroyed* by the flood, plaintiff was entitled to recover the fair market value of the same at the time and place where they were destroyed. Defendant submits that this told the jury that plaintiff was entitled to recover in any event if they found that the pianos were caught by the flood. But we have observed that the preceding instructions told the jury that plaintiff could only recover in case defendant had failed to exercise ordinary care. Surely there could be no misunderstanding on the part of the jury as to what this last instruction meant. They were intelligent enough to know that it was not intended to change the rule of liability stated in the instruction which preceded it. The want of ordinary care as an essential to liability had been plainly prescribed to the jury. Incompleteness in one instruction may be cured by another, where they are not inconsistent with each other. *State* v. *Cottrill,* 52 W. Va. 363; *State* v. *Dodds,* 54 W. Va. 289. This last instruction was entirely consistent with those that preceded it, and wherein it was incomplete, they sufficiently added to it and made it clear.

Another criticism of the instruction to which we have last referred is that it begins with the sentence: "The court instructs the jury that from the evidence in this case the plaintiff is entitled to prosecute this suit." We do not quite appreciate the necessity and purpose of this, but we deem it harmless. We must assume that the jury knew that there was a difference between being entitled to prosecute a suit and being entitled to recover therein. Moreover, the very next sentence in the instruction told the jury that only from the evidence could they find whether plaintiff was *entitled to recover*. Irrelevant matter in an instruction, not of the character to mislead, will not vitiate the instruction if it is otherwise sufficient.

The court gave only two of the fourteen instructions asked by defendant. We do not find that defendant was prejudiced by the court's ruling in this particular. The two instructions given presented the proper theories of the case to which defendant was entitled. Taken with those given for plaintiff the law of the case was fairly and impartially covered. Though one or more of the refused instructions might properly have been given, other instructions given sufficiently submit the same substance and there is no error. Where instructions already given cover the entire case and properly submit it to the jury, the court may refuse other proposed instructions which would not further aid the jury in reaching a verdict. 7 Enc. Dig. Va. & W. Va. Rep. 742.

Defendant says it was entitled to its proposed instructions that the burden of proof rested on plaintiff to show that defendant was negligent. Plaintiff assumed the proving of defendant's negligence, whether legally obligated to do so or not. Therefore, saying to the jury that the proving of negligence was on plaintiff seems unimportant. As the case presented itself the material inquiry was whether failure on the part of defendant to use ordinary care appeared by a preponderance of the evidence. One of the instructions given for defendant told the jury that there must be such a showing. This, on the principle hereinbefore mentioned, was sufficient.

The evidence did not warrant the giving of instructions embracing the question whether the pianos remained in the

care of plaintiff, and whether plaintiff had notice of the danger in time to protect the property itself.

The fact that some of defendant's own property located on the same floor with the pianos was injured by the flood was not proper as a standard on the question whether defendant used ordinary care to protect plaintiff's property, and the instructions on this line were properly refused. Defendant may have neglected its own property. It may not have acted the part of prudent men as to its own. Not how defendant treated its property, but how ordinarily prudent men would have treated theirs was the proper criterion. It is certainly not reasonable to say that a warehouseman may reduce his liability for the goods of others which are entrusted to him by simply neglecting his own. There was a marked difference in the character of defendant's property from that of plaintiff. The question was not what defendant did to save its feed, but what prudent men would have done to save plaintiff's delicate and valuable pianos. For all we know, if the property of defendant had been pianos, it would have acted differently toward the same. "What a warehouseman chooses to do with his own property or what risk he may assume in connection therewith, is not the test of his legal obligation to the property of the bailor." *Carolina Rice Co.* v. *West Point Mill Co.*, —— S. C. ——; 82 S. E. 679.

Defendant's proposed instruction as to the measure of damages was too limited. Merely what it would cost to replace the pianos was not a proper measure. In such a case as this the measure should be the fair value of the property to plaintiff at the time and place of the loss. 1 Sedgwick on Damages (9th ed.) sec. 248a. It takes that to compensate the owner. Into the ascertainment of such value other elements than what it would cost to replace the property must necessarily in most cases enter. *Suydam* v. *Jenkins*, 3 Sand. 614.

The verdict was not excessive. The jury seem to have fixed a fair standard for the loss. From the evidence they were warranted in finding that the pianos were a total loss and in returning that it would take the amount of the verdict to make plaintiff whole in the premises. The evidence sufficiently proves that the pianos were fairly worth to plaintiff

the sum of thirty-five hundred dollars at the time and place of the loss.

There has been a fair trial on the whole case. The judgment must stand. An order will be entered affirming it.

*Affirmed.*