# CHARLESTON.

## Ocie McDaniel v. J. Lowery Coogle.

### (No. 5281)

Submtted October 27, 1925. Decided November 10, 1925.

1. EVIDENCE—*Letter Referred to in Conversation Held Admissible as Part of Conversation.*

   Receipt of a letter written by plaintiff to defendant, charging a contract of marriage between the parties (which is the basis of the suit) and demanding the answer of the defendant as to whether or not he intended to perform the agreement, was acknowledged by him a few days later in a conversation with plaintiff; and in reply to her question as to why he had not answered it defendant stated: "I have nothing to write about. I am not going to do anything. You have started this and you can just go to it". *Held:* The letter is admissible as part of the conversation. (p. 383.)

   (Evidence, 22 C. J. § 1106.)

2. EVIDENCE—*Letter Held Admissible to Rebut Testimony of Defendant That he Knew Nothing of Claim of Marriage Contract Until Time Subsequent to Receipt of Letter.*

   Likewise, where defendant testifies that he knew nothing of the claim made by plaintiff of the marriage contract until a time subsequent to receipt by him of a letter written by her, which set forth substantially what is alleged to have been said between the parties as constituting the agreement, the letter is admissible in rebuttal to such testimony of defendant. (p. 383.)

   (Witnesses, 40 Cyc. p. 2475.)

   (NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Marion County.

Action by Ocie McDaniel against J. Lowery Coogle. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Frank C. Haymond* and *Henry S. Lively,* for plaintiff in error.

*Shaw & Shaw,* for defendant in error.

Litz, Judge:

In an action of assumpsit for alleged breach of promise, plaintiff obtained judgment, on the verdict of the jury in her favor, against the defendant for $15,000.00. To this judgment the defendant prosecutes error.

After an association of ten years, the plaintiff asserts that on January 1, 1922, she and the defendant entered into a mutual promise of marriage. The facts and circumstances detailed in her testimony warrant this conclusion. During their friendship, he bestowed upon the plaintiff many gifts, including an allowance for a period of $50.00 per month. After the alleged engagement, according to her evidence, she had sexual intercourse with the defendant. He denies the promise and the alleged intercourse, and claims that the long friendship between them was purely platonic. Several witnesses for the defendant state the plaintiff admitted to them that he had never agreed to marry her.

The grounds of error assigned are:

(1) The admission of the testimony of the plaintiff that after the alleged promise she had sexual intercourse with the defendant;

(2) The admission of letters from the plaintiff to the defendant, dated June 21 and December 6, 1922, and copies of letters from her to him, dated October 26, and November 2, 1922;

(3) The admission of testimony of the plaintiff that defendant was worth $125,000.00;

(4) The giving of plaintiff's instructions Nos. 1, 2 and 3;

(5) The refusal of defendant's instructions Nos. 5, 6 and 7;

(6) The refusal to submit special interrogatories to the jury;

(7) The disqualification of two of the jurors who tried the case;

(8) The alleged excessiveness of the verdict; and

(9) That the verdict is against the clear preponderance of the evidence.

The first point of error is without merit. The evidence of illicit intercourse between the parties was proper as bearing on their relations and the existence of a promise to marry. Indulgence in sexual intercourse may be considered in a breach of promise suit as tending to support the claim of the alleged promise. 9 C. J. 358; *Connolly* v. *Bollinger,* 67 W. Va. 33.

Did the admission of the letters and copies of letters complained of constitute reversible error? The letters of October 26 and November 2, 1922, are of little moment. They contain mere expressions of appreciation for kindnesses of the defendant, of disappointment that he had not called more often lately, and of hope that he would come in the near future; so that, whether properly admissible or not, their introduction could not have prejudiced the rights of the defendant.

Whether or not the letters of June 21 and December 6, 1922, were admissible as containing a demand or relating to an existing contract, they were at all events proper on independent grounds. The letter of June 21st incorporates practically what is alleged to have been said by the parties as constituting the agreement of January 1, 1922. This letter, received by the defendant shortly after it was written, was retained by him for several days, until it dropped from his pocket while he was calling on the plaintiff, when she recovered the paper and preserved it for the trial. It being presumed, under the circumstances, that the defendant read the letter, which he does not deny, it was proper to be considered (though admitted in advance) in rebuttal of his testimony that he had no notice of the plaintiff's claim until October, 1922.

The plaintiff testified that she met the defendant some days after mailing the letter of December 6th, which, charging the existence of the promise, demanded his answer of intended fulfillment; that at that time he admitted having received it and, in reply to her question as to why he had not replied, said: "I have nothing to write about. I am not going to do anything. You have started this and you can just go to it".

This letter, therefore, assumes the status of part of a conversation between the parties, and is for that reason entirely competent.

Plaintiff, after showing her familiarity with various properties of the defendant, was permitted to state that in her opinion his wealth would amount to $125,000.00. It is contended that she was not shown to have had sufficient knowledge of property values generally to qualify her as a witness on the subject. The evidence indicating that, through years of close and intimate relationship existing between them, she had become and was thoroughly conversant with his business affairs, we have no hesitancy in holding that the testimony in question was admissible. Some courts have gone even to the extent of holding that the financial worth of the defendant in a breach of promise suit may be proved by reputation. *Morgan* v. *Muench*, (Iowa) 156 N. W. 819, 824; 3 Wigmore on Evidence, 2d Ed., page 378.

Plaintiff's Instruction No. 1 told the jury that she was entitled to recover if the defendant had entered into a marriage contract with her, which he had within one year thereafter refused to perform. Her Instruction No. 2 also informed the jury that she should recover if there was a promise of marriage between her and defendant, which he thereafter refused to perform, although no definite time for the consummation of the marriage was fixed. These instructions are objected to on the ground that they ignore the question of readiness and willingness on the part of the plaintiff to perform. This point is not substantial. These instructions cover the only issues in the case, as to whether there was a contract and the defendant had refused to perform it. In fact, there was but one issue, as to whether there was a contract of marriage between the parties. There was not even a claim that she was not ready and willing to perform, nor that he had offered to do so.

Plaintiff's Instruction No. 3 told the jury that indefinite and indirect conversation between the plaintiff and defendant, capable of being interpreted as relating to marriage, aided by a course of conduct indicative of betrothal, is sufficient to sustain a finding of a marriage contract without proof

of an express, formal engagement. This instruction is criticised without reason, as invading the province of the jury. It is Point 3 of the syllabus, *Connolly* v. *Bollinger,* cited.

Defendant's Instruction No. 5, refused, would have told the jury that although there was a mutual promise of marriage between the parties, plaintiff could not recover unless the defendant "received the promise of plaintiff in earnest". No authority is cited to support such an instruction, and we know of no principle of law that would relieve the defendant upon his showing that he had entered into the contract in bad faith and without intention of performing. The law certainly does not place a premium upon wrong.

Defendant's Instruction No. 6, alleged to have been refused, states that the mutual promise to marry must be established by a preponderance of the evidence. It is not true, as assigned, that this instruction was refused by the court. The record shows it was read to the jury immediately following the reading of Plaintiff's Instruction No. 3.

Defendant's Instruction No. 7, refused, reads:

> "The court further instructs the jury that the mere fact that an unmarried man is gallant or kind to women and shows unmarried women courtesies, kindnesses and attentions is, taken alone, no sufficient proof that he has marriage in his purpose or that he is engaged to be married, if, therefore you find from the evidence that the defendant was gallant and kind in his conduct to the plaintiff and showed her courtesies, kindnesses and attentions from a spirit of gallantry, sympathy or kindness, but not for the purpose of marriage, then you must return a verdict for the defendant".

In lieu therefore the court gave the following instruction:

> "The court further instructs the jury that the mere fact that an unmarried man is gallant or kind to women and shows unmarried women courtesy, kindness and attention, is taken alone, no sufficient proof that he has marriage in his purpose nor that he is engaged to be married".

It will be seen that the court properly refused the instruction offered as it would have, in effect, informed the jury that if the defendant showed the plaintiff courtesies, kindnesses and attentions in the spirit of gallantry, sympathy or kindness and not for the purpose of marriage, she was not entitled to recover although there may have been in fact a mutual promise of marriage between them. The instruction, to have been proper, should have further required the jury to find, before returning a verdict for defendant, that there was no other evidence tending to establish the alleged agreement. The instruction given by the court in lieu of the one offered contains all of the legitimate parts of the latter.

The defendant requested the submission of five special interrogatories to the jury which, in substance, would have required the jury to report a finding showing when and where the marriage contract was entered into between plaintiff and defendant, and when and where broken by the defendant. The only issue in the case, as already observed, being whether or not there was a marriage contract, and the evidence showing conclusively the time and place it was entered into, if at all, there was no reason or occasion for the submission of such interrogatories. The trial court may refuse to submit special interrogatories to the jury where the issues are few and uncomplicated, and it is apparent that special verdicts would not assist the jury in arriving at a correct conclusion. *Lovett* v. *Lisagor,* decided at this term.

Upon his motion to set aside the verdict the defendant filed affidavits:

(1) Of Smith Morris, stating that Dan R. Flemming, one of the jurors who sat in the case, had told affiant shortly before the trial that ''the defendant Coogle should be made to pay a large sum of money as he, the said Flemming, understood and believed that said Coogle had all of his life been making a practice of preying on women, or words to that effect; that said Fleming clearly indicated to affiant that he was very hostile to said Coogle and was against him in said suit''; and that during the trial he had another conversation with the juror in which affiant ''asked the said Flemming what

amount plaintiff in said suit was suing to recover from the defendant, and further said to the said Fleming, 'Is it for ten thousand dollars?', to which said question the said Flemming replied in substance, 'No, it is for fifty thousand dollars', to which affiant replied, after making an exclamation, 'That is too much money', and to which said Flemming replied, 'No, that is not enough' ".

(2)   Of Guy L. Carter, stating that a few days before the trial he heard J. D. Flemming, another juror in the case, say "I heard that he (defendant) said that the best piece he ever got was off a fourteen year old girl".

(3)   Of C. W. Brandon, attorney at law, stating that he represented a daughter of Dan R. Flemming in a bastardy proceeding before the criminal court of Marion county in which "the last order was entered by said criminal court on the 14th day of April, 1924".

(4)   Of himself and his attorneys, Henry S. Lively and Frank C. Haymond, to the effect that they did not know, and could not have learned by the exercise of reasonable diligence, of the existence of the alleged statements made by the jurors Flemming.

In reply to the affidavits on behalf of defendant, the plaintiff filed the affidavits:

(1)   Of the juror Dan R. Flemming, in which he wholly denies each of the alleged conversations referred to in the affidavit of Smith Morris; and

(2)   Of the juror J. W. Flemming, stating that he made "some remark as to what some one had said Mr. Coogle had said about a fourteen year old girl", in a joking conversation with Guy L. Carter on an occasion when some one present was "kidding Carter, who was an old bachelor, about the girls"; that he had never entertained any bias or prejudice against defendant, of whom he had been a friend for many years; and that he acted conscientiously under his oath as a juror, basing his agreement to the verdict returned wholly on the evidence and the instructions of the court.

We would not be justified in reversing the ruling of the trial court on the affidavits submitted.   In *State* v. *Greer*, 22

W. Va. 800, on motion to set aside the verdict, the prisoner filed affidavits which were not contradicted, showing a juror had on one occasion before the trial expressed the opinion that the defendant ought to be hanged for the murder for which he was later tried. The ruling of the trial court, in refusing to set aside the verdict on this ground, was affirmed on appeal. Unsworn, unconsidered and careless statements of jurors made to third persons before their selection as jurors are insufficient to set aside their verdict. *State* v. *Maier,* 36 W. Va. 763; *State* v. *Porter,* 98 W. Va. 390. The fact that a juror expressed himself, before the impanelment of the jury, as determined to punish the prisoner if taken on the jury, not from any malice towards him, but from an opinion of his conduct, is no ground for setting aside the verdict and granting a new trial. *Curran's Case,* 7 Gratt, 619.

On the two remaining assignments it is necessary to say only that the issue as to the existence of a contract was under the evidence clearly a matter for the jury; and the damages in a breach of promise suit being ordinarily in the discretion of the jury, we see no reason against the application of the rule in this case. *Flint.*v. *Gilpin,* 29 W. Va. 740; *Grubb* v. *Sult,* 32 Gratt 209.

The judgment of the circuit court will therefore be

*Affirmed.*