Ivy D. Curfman *v.* Monongahela West Penn Public Service Company.

(No. 7340)

Submitted October 25, 1932.   Decided November 22, 1932.

*K. C. Moore,* and *Robert B. McDougle* and *Ambler, McCluer & Ambler,* for plaintiff in error.

*B. M. Whaley* and *Russell, Hiteshew, Adams & Hill,* for defendant in error.

WOODS, JUDGE:

Plaintiff, an unmarried woman forty-four years of age, obtained a judgment against defendant company for personal injuries alleged to have been received by reason of the collision of the interurban car in which she was riding, with the rear end of the car immediately ahead.

The negligence declared on was that the motorman of the rear car operated the same at such a rapid rate of speed and in such close proximity of the car preceding it, that by reason

thereof he was not in a position to avoid a collision after the operator of the leading car had been compelled to make an emergency stop.

Considerable evidence was introduced on plaintiff's behalf to the effect that prior to the accident she was healthy, worked, took long walks, and apparently enjoyed life, and that since that time she has had only partial use of her left arm, suffers extreme pain in the back and head, and is unable to work. She contends that her present condition is traceable to the accident, while the defendant attributes it to arthritis or rheumatism. A greater part of the evidence is devoted to this issue.

Dr. Boger, the family physician, was consulted a few days after the accident, and some ten days thereafter had an x-ray taken, and, as a result thereof, sent plaintiff to a chiropractor for the purpose of adjusting the vertebrae. This witness testified that the plaintiff was suffering from a wrench of the ligaments which held the bones of the spine in position; and that while the bones have gradually been brought back into alignment, such injuries are always troublesome—being between permanent and semi-permanent. He also stated that such affection leaves innumerable complaints of a neurasthenia nature behind it. Some months after the accident, and prior to the trial, Dr. Goff made an examination, with the aid of x-rays, and, while finding no broken bones, abnormalities or evidence of physical injury, he diagnosed the trouble as traumatic neuresthenia, which he stated is permanent in persons over forty. His conclusion was reached after syphilis, rheumatism and malingering had been considered and eliminated.

The chief assignment of error goes to the court's refusal of defendant's several motions for physical examination of plaintiff, the same to be conducted by physicians of defendant's selection, to be approved by the court. It appears from the record that plaintiff, over the period June 4th to September 3, 1929, submitted to a number of examinations by Drs. Widemeyer, Davis and Boice.

Dr. Davis, who examined plaintiff at the latter's residence on June 4, 1929, could find no evidence of injury other than complaint of pain on pressure over the area of the dorsal spine. He testified that he saw plaintiff five times between the 4th

and the 14th of June, making brief examinations on some of his visits. On June 7, 1929, Dr. Boice took three x-rays: (1) trunk of the body; (2) dorsal spine A. P.; and (3) profile of the vertebrae. The last picture, according to Dr. Boice, showed lipping in the anterior margins in several of the thoracic vertebrae. Dr. Davis testified that this condition of the vertebrae indicated arthritis, commonly called rheumatism; and both he and Dr. Boice were of opinion that it had taken nine to twelve months for the condition revealed by the x-ray to develop. Dr. Davis stated that the only things upon which a physician can base a diagnosis of neuresthenia are the patient's complaints; that traumatic neuresthenia is a diagnosis that doctors make when they find no pathology; and that arthritis has the same symptoms, except doctors find a pathology. Dr. Widemeyer due to Dr. Davis' absence from the city, was secured by defendant company and made several calls between June 16th to 26th. In an examination on June 16th Dr. Widemeyer found no injury to neck and shoulders, and after a study of the x-rays taken by Dr. Boice, diagnosed plaintiff's complaint as arthritis or rheumatism of the spine. This witness stated that chiropractic treatment, such as prescribed by Dr. Boger, would have a tendency to impair and prolong an arthritic condition.

All the foregoing evidence on behalf of defendant company tends simply to contradict the testimony of plaintiff's witnesses. According to the defense, there was a lipping of the vertabrae. Plaintiff's testimony in effect negatives such condition. What else could an examination reveal in this particular? Further testimony in such regard would be merely cumulative—would not tend to show a stronger case. In *Perkins* v. *Traction Company,* 81 W. Va. 781, 95 S. E. 797, we held that such matters are within the sound discretion of the trial court. It is apparent that, under the circumstances, that discretion has not been abused. Also, see *Quinn* v. *Flesher*, 85 W. Va. 451, 458, 102 S. E. 300.

Three of the errors assigned relate to the admission of evidence of lay witnesses regarding the condition of plaintiff's health prior to and following the accident. One testified in effect that plaintiff was in good health and enjoyed life prior to the accident, while another stated that she had a happy dis-

position. A third was permitted to state that plaintiff is now an invalid and helpless. Were the foregoing statements properly admitted? These were statements of fact. It is true that they were to some extent conclusions of fact observed by the witnesses; but not all conclusions of fact of non-expert witnesses are inadmissible in evidence. The test of such admissibility is this: Is it clear that the jurors were or could have been as fully and as exactly furnished with the data which formed the basis of the conclusions of the witnesses as the latter were. If so, the conclusion is inadmissible in evidence; if not, it is admissible. Wigmore on Evidence, secs. 1917, 1921, 1924, 1926, and cases cited. Applying such test we think the testimony in question was admissible.

On direct examination of Dr. Goff, a witness for the plaintiff, the trial court, over objection, permitted the following question and answer: ''Q. Doctor, after you took the history of the case, state whether or not in that history you obtained any information as to whether or not she was suffering from pains in the back and in the head, or in the shoulders and in the head? * * * A. In taking the history of this patient, she said that she had been in good health and working for the past year up until an accident had occurred which, she stated, was on May 27, 1929, on a street car. She said she worked five days after the accident with considerable pain—about five days with considerable pain but continued her work, then she consulted a physician. She said that following this accident she had considerable pain in her head, the base of the skull and neck, in both shoulders, more particularly the left, and in the back down to the lumbar region. The pain was not so severe in the lumbar region and in the pelvis as it was in the shoulders and back.''

The foregoing testimony is attacked as being violative of the rule which precludes a party from giving evidence of declarations made not under oath to bolster up and confirm statements made on trial under oath. Citing, *Chicago, etc. R. Co.* v. *Rowell,* 151 Ky. 313, 151 S. W. 950; *Stewart* v. *Everts,* 76 Wis. 35, 44 N. W. 1092; *Smith* v. *Hausdorf,* 92 Conn. 579, 103 A. 939; *Consolidated Traction Co.* v. *Lamberton,* 60 N. J. L. 452, 38 A. 683; *Hutchinson* v. *Jersey Central Traction R. Co.,* 100 N. J. L. 218, 126 A. 481; *Rowland* v. *Phila. & B. R.*

*Co.*, 63 Conn. 415, 28 A. 102; and others. The text-writers, and a great many of the decided cases, recognize a distinction between (1) statements made during the progress of the diagnosis to enable the physician properly to treat the patient, and (2) those made to assist him in diagnosing the condition for the purpose of testifying. Representations by a sick person of the nature, symptoms and effects of the malady under which he was laboring at the time fall within the first classification. Such statements are ordinarily received as original evidence, under some circumstances being regarded as the language of pain, or as a part of *res gestae*, and not as hearsay evidence, and, therefore, admissible to establish the truth of the matters communicated. A different rule, however, applies as to the second class. One of the latest collections of cases dealing with statements falling under this head is to be found in a note in 67 A. L. R., at page 18, where the deduction is made: "It is generally, though not universally, held that statements by an injured or diseased person to a physician as to past matters, while not admissible as evidence of the facts stated, may be testified to by the physician to show the basis of his opinion." In support of this proposition we find federal decisions, as well as those of the appellate courts of Alabama, California, Iowa, Maine, Massachusetts, Missouri, Ohio, Oklahoma, Texas, Vermont, Washington and Wyoming. In some jurisdictions, however, such declarations are absolutely excluded. *Grand Rapids & I. R. Co.* v. *Huntley*, 38 Mich. 537. In others, the circumstance that the declarations were *post litem* is taken as not excluding them, but merely affecting their weight. *Shenandoah Valley Loan, etc., Co.* v. *Murray*, 120 Va. 563, 91 S. E. 740.

In the well considered case of *Cronin* v. *Fitchburg & L. Street R. Co.*, 181 Mass. 202, the Massachusetts court said: "It is plain that the statement by a party to a cause of his bodily and nervous symptoms, made long after the occurrence of the accident to which he attributes them, and for purposes connected with the preparation for trial of a suit in which his condition of health is material, and not made to a physician for the purpose of obtaining advice or treatment, are not admissible in evidence in his own favor as proof of the truth of the matters stated. It is equally plain that every person admitted as an expert to testify to his opinion may state in his

testimony the grounds and reasons for that opinion, and that the party calling the expert may put in evidence those grounds and reasons in the direct examination of the expert, and before calling upon him to give his opinion to the jury. The statement of these rules as to the examination of witnesses called as experts, made by Chief Justice Bigelow in *Barber* v. *Merriam,* 11 Allen 322, 324, has since the decision of that case been considered as law in this commonwealth, and has governed trials. So well established is this doctrine that the expert. upon direct examination, and before giving his opinion in evidence, may testify to the matters which form the grounds and reasons of that opinion, that in *Koplan* v. *Boston Gaslight Co.,* 177 Mass. 15, 21, 58 N. E. 183, this court overruled, without discussion, an exception to testimony so given, and which, save as showing the grounds of the opinion about to be given by the witness, would have been inadmissible.'' The opinion of a surgeon or physician is necessarily formed on a part of the statements of the person examined describing his conditions and symptoms and the causes which have led to the injury or disease under which he appears to be suffering. It is obvious that it would be unreasonable to receive the opinion of the physician in evidence, and at the same time shut out the reasons on which it was founded. Such a course of practice would take from the consideration of a court and jury the means of determining whether the judgment of the expert was sound and his opinions well founded and satisfactory. So, it seems to us that the rule taken from the annotation in 67 A. L. R. is the better one, and that plaintiff was entitled to inquire of Dr. Goff and to have him testify concerning statements made by plaintiff to him in reference to her bodily condition, as a basis for his diagnosis. The defendant's objection to such testimony in the instant case was general. The rule is well established in this state that evidence that is competent for any purpose is properly admitted over a general objection thereto. *Rogers* v. *Engineering Co.,* 101 W. Va. 1, 131 S. E. 869; *Perkins* v. *Traction Co., supra.*

Defendant complains of the giving of plaintiff's instructions Nos. 4 and 5. Instruction No. 4 reads as follows: ''If you believe from the evidence that the Plaintiff, Ivy Curfman, on the 27th day of May, 1929, became a passenger on one of

Defendant's cars for hire, and that the car in which the Plaintiff, Ivy Curfman, was a passenger, ran into and collided with another car of the Defendant, and as a result of said collision the said Plaintiff, Ivy Curfman, was injured without any fault on her part, the Plaintiff, Ivy Curfman, thereby makes out a prima facie case of negligence against the Defendant, Monongahela West Penn Public Service Company, *and places upon it, the Defendant, the burden of proving by a preponderance of evidence that the accident resulted from a cause, known or unknown, which could not have been foreseen or prevented by the exercise of reasonable care, vigilance and foresight on behalf of the Defendant Company."*

It is maintained on behalf of defendant company that the placing upon it "the burden of proving by a preponderance of the evidence that the accident resulted from a cause," etc., is not the law. A like criticism is directed at No. 5. These instructions purport to represent the doctrine *res ipsa loquitur*. There are many unguarded statements to be found in cases in which the court was not directly considering the question of relationship between the rule and the burden of proof, that imply, or at least suggest, that the rule *res ipsa loquitur* when applicable, has the effect to shift the burden of proof, without observing the distinction between the different senses in which the term "burden of proof" is used, i. e., the burden of going forward with the evidence, and the burden in the sense of the risk of non-persuasion. There seems to be no real dissent from the proposition that the rule *res ipsa loquitur,* when applicable, does not have the effect to shift the burden of proof, as distinguished from the burden of evidence—of the burden of proof in the sense of the risk of non-persuasion, as distinguished from the burden of proof in going forward with the evidence,—in cases in which the court consciously had that relationship before it and was deliberately considering the point. It is obvious that the instructions involved are out of harmony with the modern and orthodox view above stated, if interpreted as casting upon the defendant the burden of satisfying the jury by the greater weight of the evidence that there was no negligence. Had the instructions merely told the jury that the burden of proof was upon the defendant, they might readily have been interpreted in the sense of the burden merely

of going forward with the evidence, although an instruction in that form is objectionable unless the court explains that the expression "burden of proof" is not used in this connection in the sense of the risk of non-persuasion. The practical question here is whether instructions 4 and 5 are so drawn as to mislead the jury. The possibility of actual prejudice to the defendant from their giving lies within a comparatively narrow range. Instruction No. 4 is practically that laid down by Sackett, Vol. 2, section 1796, which is supported by *Pittsburgh C. & St. L. R. Co.* v. *Thompson,* 56 Ill. 138, and *Lemon* v. *Chanslor,* 68 Mo. 340. In some instances, the objection to particular instructions upon this score have been overcome by other parts of the charge, indicating that there was no intention of imposing the burden upon the defendant except in the sense of the duty of going forward with the evidence. In the instant case, instructions were given, by the plaintiff, in which the jury were plainly told that the burden rested throughout upon the plaintiff to make her case. On the other hand, a number of the defendant's instructions were to like effect. We cannot say that instructions 4 and 5 relieved the plaintiff from the burden on the whole case. While it may be conceded that they were not strictly accurate (incomplete) nevertheless, as it clearly appears from the evidence, it did not in any manner operate to mislead the jury to the prejudice of the defendant company, when read in connection with the other instructions. Our court has often held that incompleteness in one instruction may be cured by another. *Prunty* v. *Tyler Traction Co.,* 90 W. Va. 194, 110 S. E. 570; *Bank* v. *Lowry & Co.,* 81 W. Va. 578, 94 S. E. 985; *Powell Music Co.* v. *Storage Co.,* 75 W. Va. 659, 84 S. E. 563; *Stewart* v. *Parr,* 74 W. Va. 327, 82 S. E. 259; *Connolly* v. *Bollinger,* 67 W. Va. 30, 67 S. E. 71. Such instructions, although considered erroneous, have been held to be harmless. *Pittsburgh C. C. & St. L. R. Co.* v. *Higgs,* 165 Ind. 694; Note in 42 A. L. R. 865.

Objection was made on motion to set aside the verdict that counsel for plaintiff made certain slanderous statements in his closing argument before the jury to the prejudice of defendant. This matter was made a part of the record by a separate bill of exceptions. As appears from the records, no objection was made at the time the several statements were

made. "Remarks of counsel in an argument to the jury, regarded as improper and harmful to the opposite party, should be at once objected to, and the trial court given an opportunity to rule on the objection, and if possible counteract the effect thereof upon the minds of the jury, else the error will be regarded as waived, if afterwards urged as ground for setting aside the verdict and for a new trial." *Given* v. *Diamond Shoe Co.*, 84 W. Va. 631, 634, 101 S. E. 153.

Other errors regarding the admission of evidence, refusal of instructions, etc., not specifically dealt with, have been carefully considered by the court, and no reversible error found therein.

We are of opinion that the plaintiff, in view of all the evidence, has made a case sufficient to support the jury verdict. And so believing, affirm the judgment entered thereon.

*Affirmed.*