WILLIAM M. FRAZIER *v.* GRACE HOSPITAL, INC., *A Corporation*

(No. 8313)

Submitted April 8, 1936. Decided April 14, 1936.

WOODS AND MAXWELL, JUDGES, dissenting.

*Poffenbarger & Poffenbarger* and *French & Easley,* for plaintiff in error.

*Crockett & Tutwiler* and *Strother, Curd, & Berry* and *Frank Lively*, for defendant in error.

HATCHER, PRESIDENT:

The plaintiff, a child, was treated a number of months in the defendant's hospital for injuries received when struck and dragged by an automobile. He claims in this action that the defendant dilatorily diagnosed and negligently treated some of his injuries. The jury rendered a verdict in his favor which the circuit court set aside, and he prosecutes error here.

The order of the circuit court recites that the verdict was set aside because of error in plaintiff's instructions Nos. 1 and 3. No. 1 follows: "The court instructs the jury that if you believe from the evidence in this case that the defendant negligently failed to properly diagnose plaintiff's injuries resulting from the automobile accident, and negligently failed to discover and properly treat the same, and that such negligence was the proximate cause of the injuries of which the plaintiff is now suffering, you will find for the plaintiff."

No. 3 duplicates No. 1 to the extent that the practical effect of the two is the same. Both instructions are binding; both submit the alleged negligence of defendant to the jury without defining what constitutes negligence in medical and surgical treatment. Instructions for defendant correctly informed the jury the extent of defendant's undertaking, and that "* * * negligence of a physician or surgeon in diagnosis or treatment is established only by proof by other physicians or surgeons competent to judge that he failed to do something he should have done or that he did something he should not have done, and which did not accord with reasonable care and diligence as practiced by the accredited members of the profession in the locality, or similar locality, in which defendant's surgeons and practitioners practiced."

Ordinarily an incomplete instruction should not be given. *Morrison* v. *Roush*, 110 W. Va. 398, 158 S. E.

514. Particularly is incompleteness objectionable in a binding instruction. *Mercer Funeral Home* v. *Addison*, 111 W. Va. 616, 163 S. E. 439. The latter decision condemned a binding instruction based on negligence when neither it nor any other instruction defined negligence. We have further held that "Incompleteness in one instruction may be cured by another, where they are not inconsistent with each other." *Music Co.* v. *Storage Co.*, 75 W. Va. 659, 84 S. E. 563. Here the definition of negligence in defendant's instruction is not inconsistent with the phrase "negligently failed" in plaintiff's instructions, but supplements and completes them. Therefore it would seem, abstractly at least, that the giving of plaintiff's instructions was not prejudicial error. The correctness of that abstraction would naturally depend on the manner in which plaintiff's counsel argued the instructions to the jury. Of that we are not advised. The record discloses only that the learned trial court regarded *the giving* of the instructions as prejudicial error, with which opinion we cannot concur.

Defendant was refused a peremptory instruction. This refusal was made a point of error on motion to set aside the verdict, and, although not passed upon directly by the trial court, is assigned here as cross-error and will be considered.

When plaintiff was brought to defendant's hospital, he was unconscious; his head had two stellate fractures with resultant brain injury; his right thigh bone was broken; and his body was covered with lacerations and contusions. Within forty-eight hours "pus appeared in every wound which the boy had." Within six days, his temperature rose to 105° and hovered near that point for several weeks. It was days before he regained consciousness. Arthritis developed in several joints, with destructive effects on and displacement of the left hip joint. Improvement was slight and slow.

Plaintiff was finally removed from the defendant's hospital to one in Tennessee. He was still in bad physical condition and the physician in charge of the latter hospital so testified. But he did not say that plaintiff's con-

dition then was chargeable in any way to prior negligent professional care or skill. No physician or surgeon so testified. Plaintiff's counsel predicate the charge of malpractice on the testimony of laymen which showed the failure of defendant to exclude ants from a suppurating sore on plaintiff, and which tended to show failure to cleanse sufficiently some superficial wounds, and to diagnose promptly an injury to his left hip. Counsel contend that it is common knowledge that such failures would constitute actionable negligence, and that the jury was warranted in so finding.

It is not denied that on one occasion about two weeks after plaintiff had been admitted to defendant's care, ants were found on a suppurating sore. The ants were removed and did not return. The plaintiff had the sore and the suppuration before the ants came, and there is no evidence that his condition was aggravated thereby. The incident might indicate negligence, but whether it was negligence which harmed the plaintiff would require specific evidence.

As to cleansing the open wounds, the undisputed testimony of defendant is that they were bathed with antiseptic solutions. Whether the dirt observed by plaintiff's witnesses should have been removed at all events, is assuredly beyond the common knowledge of mankind. For dirt is not necessarily infectious (according to uncontradicted professional evidence) and the Tennessee physician (the only professional witness used by plaintiff) admitted that "when anybody scrapes the wound or tries to clean the wound, he might get an infection."

On the failure to diagnose promptly—plaintiff's major point—his counsel say: "The practically, if not wholly, uncontradicted testimony with reference to the left hip, is that no X-Ray picture thereof was taken earlier than March 1, 1934. The patient entered the hospital September 29, 1933. * * * The father of the plaintiff, only two or three days after he entered the hospital, discovered that the position of the (left) foot was abnormal. * * * He brought that fact to the attention of the physician.

As that condition continued, Mr. Frazier, brought it to the attention of the physician again. He testified that the Doctor said there was no injury to the hip, and that the abnormal condition of the foot was due to arthritis of the knee. A little later it was discovered that the flexing of the knee was without pain, which indicated error in the Doctor's explanation. That was brought to his attention. Still there was no investigation of the hip * * * and total lack of treatment for such injury."

Counsel overlook much undisputed evidence. Dr. Fulcher, defendant's physician in charge, testified without contradiction, that upon plaintiff's admission to the hospital an X-Ray picture was made of "the pelvis, both hip joints and the right thigh." He produced the picture and said, "It shows both the right and the left hip, but it shows that the heads of each bone *is* in their proper places that is in the socket." When counsel say "still there was no investigation of the hip," they must mean further X-Ray investigation, for Dr. Fulcher testified, without contradiction, that he noted some symptoms of arthritis on October 14, 1933, and that "about December 4th tenderness, redness and swelling of the left hip joint was discovered." The witness continued: "This would indicate or did indicate the beginning of arthritis of the left hip joint and subsequently it was treated by the application of heat and absolute rest * * * by transfusion or intravenous administration of these fluids (theretofore referred to). Later on by artificial sunlight given by means of a lamp. * * * We placed him on a high vitamin, high caloric diet." Concomitant with this treatment, the witness demonstrated by the bedside chart of temperature, etc., that the plaintiff's condition showed some improvement. In explanation of his failure to take an X-Ray picture during that period, Dr. Fulcher said: "He (plaintiff) had an arthritis of almost every joint of his body * * *. These were sore, tender and extremely painful. * * * He was highly nervous, I would frequently give him a sedative an hour before I would undertake to dress him because of his nervousness. * * * He was just beginning to improve a little bit * * * if I had taken

him to the X-Ray room I could be doing him no good. It would have been only to satisfy my curiosity, which did not seem enough reason to punish the patient." Dr. Fulcher's testimony, if not overcoming counsel's position as a matter of law, would assuredly place the question of *failure to diagnose promptly and treat properly* also beyond the ken of laymen.

Plaintiff's father testified that on March 4, 1934, Dr. Fulcher informed him that a recent X-Ray disclosed a dislocation of the left hip. Dr. Fulcher testified that he informed Mr. Frazier, "there was a destructive arthritis of the left hip with resulting upward displacement." Counsel for plaintiff would dignify this difference in testimony as a material jury issue. We observe nothing but an inconsequential difference in words. One expression ("dislocation") is that of a layman, and the other ("displacement") that of a physician. Both mean practically the same.

We are not to be understood as ruling that no actionable negligence exists in this case. We simply hold that because of plaintiff's extraordinary injuries with their subsequent complications, negligence in treatment must be fixed by someone competent to speak instead of by laical conjecture. *Vaughan* v. *Hospital*, 103 W. Va. 156, 163-4, 136 S. E. 837.

The judgment of the circuit court is accordingly affirmed.

*Affirmed.*

Judges Woods and Maxwell are of opinion that the record as made afforded sufficient basis for the jury to determine whether there was actionable negligence, particularly with respect to the diagnosis and treatment of plaintiff's left hip; therefore that the verdict should be reinstated and judgment rendered thereon.