315 S.E.2d 583

**Ernest JENRETT**

v.

**Donald SMITH.**

No. 15873.

Supreme Court of Appeals of West Virginia.

Dec. 15, 1983.

Rehearing Denied April 11, 1984.

Leo Catsonis, Charleston, Huddleston, Bolen, Beatty, Porter & Copen, Fred Adkins and Barbara L. Ayres, Huntington, Lord, Bissell & Brook, Hugh C. Griffin and Thomas Strueber, Chicago, Ill., for appellant.

Hankins & Taylor and John H. Hankins, Huntington, De Trapano & Jackson and P. Rodney Jackson, Charleston, for appellee.

McHUGH, Justice:

This action is before this Court upon the appeal of Donald Smith, appellant and defendant below, from a final order of the Circuit Court of Cabell County awarding Ernest Jenrett, appellee and plaintiff below, damages in the amount of $288,750 plus costs and interest. The suit for such damages arose out of an accident that occurred at Tri-State Airport on February 10, 1979, when the appellee came in physical contact with the rotating propeller of an airplane owned and operated by the appellant. This Court has before it the petition for appeal, all matters of record and the briefs and oral argument of counsel.

The appellant in this case, Donald Smith, is the president and treasurer of Huntington Motors Sales, Inc. (hereinafter "Huntington Motors"), located in Huntington, Cabell County, West Virginia. Huntington Motors is engaged in the business of selling automobiles including four-wheel-drive vehicles. Mary Faye Smith, the appellant's wife, is the vice president and secretary of

Huntington Motors and together they are the sole shareholders of the corporation. The appellant is also a licensed pilot and at the time of the accident owned a twin engine airplane known as a Cessna 337 Super Skymaster and maintained such airplane at Tri-State Airport. The airplane has a unique configuration in that it has propellers on the front and rear of the fuselage. The airplane is used by the appellant for business and pleasure.

The appellee, Ernest Jenrett, was an employee of Huntington Motors on the day of the accident. He was a "detail" man whose duties included washing cars, janitorial work and other general labor. The record indicates that the appellee had washed and painted the airplane on several occasions prior to the accident.

The accident in question occurred on February 10, 1979, as the appellant and his wife were preparing to fly to Florida. When the Smiths arrived at the airport, several employees of the airport were in the process of "pre-heating" the engines of the airplane to facilitate their ignition. However, when the appellant attempted to start the airplane, the rear engine failed to start.

Mrs. Smith then called Huntington Motors and asked two employees, the appellee and Mark Meadows, to come to the airport and bring equipment to help warm the engine. In the meantime, the appellant had taxied the airplane, by use of the front engine, to another hangar at the airfield to enlist the assistance of other airport equipment. The appellant was successful in his second attempt to start the rear engine.

When the appellee and Meadows arrived, they were met at the gate by Mrs. Smith and informed that they were no longer needed. The record indicates, however, that the appellee entered the gate leading to the paved area in front of the hangar where the appellant's airplane was located. He positioned himself somewhere between the left wing of the airplane and the hangar. The record is not clear as to the exact position of the appellee, but it is uncontested that after walking toward the area of the airplane, the appellee's hat was blown off toward the rear of the aircraft. The appellee proceeded toward the rear of the airplane to retrieve the hat and at that time came in contact with the rotating propeller of the rear engine. The appellee's left arm was severed at the shoulder.

The appellee submitted a claim for worker's compensation and was awarded benefits totalling approximately $27,000. The appellee also filed a complaint against the appellant as an individual alleging negligence in the operation of the airplane and praying for damages. In his answer, the appellant asserted, *inter alia*, the defense of co-employee tort immunity under West Virginia's worker's compensation statutes, specifically, *W.Va.Code*, 23–2–6a [1949].[1]

Upon motion of the appellant, this action was bifurcated into two trials pursuant to Rule 42(c) of the West Virginia Rules of Civil Procedure.[2] The first issue presented to the jury was whether the appellant was acting "in furtherance of the employer's business" when he was about to travel to Florida on the day of the accident and, therefore, entitled to co-employee immunity.[3] If the jury found that he was not acting in furtherance of the business of Huntington Motors, then the trial would proceed to the second trial which was on the issue of the relative fault of the parties.

The appellant had the burden in the first trial to prove by a preponderance of the evidence that he was acting in furtherance of the business of Huntington Motors on the day of the accident. The appellant testified that the purpose of his trip to Florida was to purchase a number of four-

---

1. *See infra* n. 5 and accompanying text.

2. Rule 42(c) of the West Virginia Rules of Civil Procedure permits separate trials on any issue or claim if it is "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy...." In addition, the granting of separate trials pursuant to Rule 42(c) is within the discretion of the trial court. Syl. pt. 2, *Anderson v. McDonald,* 170 W.Va. 56, 289 S.E.2d 729 (1982).

3. It is uncontested by the parties that both the appellant and the appellee were employees of Huntington Motors on the day of the accident.

wheel-drive vehicles for resale in West Virginia. The appellant stated that it was common practice to purchase additional vehicles on the open market when the demand for such vehicles outweighed the allocation from the manufacturer. The appellant indicated that over the years he has developed a system of "spotters" throughout the eastern United States to inform him of surplus supplies of four-wheel-drive vehicles. In Stuart, Florida, a "spotter" named J.C. Williams had informed him of such a surplus in that area. The appellant and his wife testified that on the day of the accident they had in their possession a cashier's check and various dealer licenses to purchase the vehicles and transport them to West Virginia.

The appellee asserted in the first trial that the sole purpose of the trip to Florida was pleasure. The appellee introduced evidence that the Smiths owned a boat and a trailer in the area of Stuart, Florida, and that it was a common location for them to vacation. The appellee also introduced into evidence two accident reports of the Federal Aviation Administration upon which the appellant had indicated that the sole purpose of the trip to Florida was pleasure. At the close of the first trial the jury determined that the appellant was not acting in furtherance of the business of Huntington Motors when the accident occurred and, therefore, was not entitled to immunity from liability. The trial then proceeded to the issue of negligence.

In the second trial relating to the issue of negligence, the parties introduced conflicting expert testimony concerning the manner in which the appellant operated the airplane on the day of the accident. Jayme

Serra, an expert for the appellee, testified that the appellant should have warned the appellee of the danger of propellers and that it was improper procedure to position the airplane in front of the hangar for the purpose of "pre-heating" the engines. The appellant's expert, Jesse Stonesipher, testified that the appellant's operation of the airplane was not unusual. Stonesipher indicated that it would not have been possible for the appellant to prevent the accident inasmuch as he could not have stopped the propeller in time even if he had seen the appellee enter the airfield. The appellant attempted to show that the appellee was equally at fault for the accident. The jury returned a verdict finding the appellant 75% at fault and the appellee 25% at fault for the accident. The jury awarded the appellee total damages in the amount of $385,000. In a final order entered May 11, 1982, the Circuit Court of Cabell County apportioned the damages and awarded the appellee $288,750 plus court costs and interest.

The principal assignments of error are as follows: (1) the trial court erred when it instructed the jury in the first trial on two conflicting standards for applying the "dual purpose" doctrine; (2) the trial court erred when it refused to grant the appellant's motion for a new trial based upon the inflammatory remarks of the appellee's counsel during his opening and closing statements; (3) the trial court erred in giving and refusing to give various jury instructions during the second trial; and (4) the trial court erred when it allowed the appellee to open and close the first trial but instructed the jury that the appellant had the burden of persuasion.[4]

---

**4.** The initial issues presented to this Court are whether the trial court erred when it refused to grant the appellant's motions for summary judgment and a directed verdict upon the issue litigated in the first trial: whether the appellant was acting in furtherance of the business of Huntington Motors on the day of the accident and thereby entitled to immunity from liability under *W.Va.Code*, 23-2-6a [1949]. The appellant further asserts that the trial court also erred when it denied his motion for a directed verdict upon the issue of liability in the second trial.

With respect to the motion for summary judgment, the appellant sets forth various arguments

why the trial court should have ruled as a matter of law that he was immune from liability. Among these arguments is the contention that the appellant was "acting in furtherance of the employer's business" because the appellee was "in the course of employment" for purposes of worker's compensation. *See W.Va.Code*, 23-4-1 [1976]. We reject the appellant's assertion that the case of *Bennett v. Buckner*, 150 W.Va. 648, 149 S.E.2d 201 (1966), mandates the granting of the motion for summary judgment. A decision by the worker's compensation commissioner to the effect that an injury to an employee oc-

I

The primary issue for resolution by this Court concerns the first trial. In that proceeding, the appellant attempted to establish immunity from tort liability under the provisions of *W. Va. Code*, 23–2–6a [1949], which provides: "The immunity from liability set out in the preceding section [*W. Va. Code*, 23–2–6 [1974]] shall extend to every officer, manager, agent, representative or employee of such employer when he is acting in furtherance of the employer's business and does not inflict an injury with deliberate intention."[5]   A finding by the jury that the appellant was, in fact, acting in furtherance of the business of Huntington Motors as he planned to fly to Florida on the day of the accident would have eliminated the need for a trial on the issue of liability.

The appellant argues that he was "acting in furtherance of the employer's business" under what is known as the "dual purpose" doctrine. This doctrine is a worker's compensation concept that is usually employed by claimants seeking worker's compensation benefits for injuries or death sustained while on a trip which has business and personal purposes. The central issue in such claims is whether the injury or death occurred "in the course of" employment. *See W. Va. Code*, 23–4–1 [1976].[6]   However, we are urged by both parties to apply the

"dual purpose" doctrine to the situation in which a co-employee is "acting in furtherance of the employer's business" for purposes of establishing immunity from tort liability.   In either context, this is the first opportunity this Court has had to examine the issue.

When applying the "dual purpose" doctrine the majority of jurisdictions adhere to a rule set forth in the well-known worker's compensation case of *Marks' Dependents v. Gray*, 251 N.Y. 90, 167 N.E. 181 (1929). *See generally* 1 A. Larson, *The Law of Workmen's Compensation* § 18 (Cum. Supp.1983); 99 C.J.S. *Workmen's Compensation* § 221 (Cum.Supp.1983) (sometimes referred to as the "concurrent cause" test). In *Marks' Dependents v. Gray*, a plumber's helper had been asked by his employer to fix some faucets while in a town where he was to pick up his wife after work.   The court described the job as unimportant, unprofitable and one which "would have been postponed till some other time when it could have been combined with other work...."   251 N.Y. at 92, 167 N.E. at 182.   Shortly after embarking on the trip, the plumber's helper was killed in an automobile accident.

In concluding that the death was not compensable, the Court of Appeals of New York, in an opinion authored by Chief Justice Cardozo, devised a test for determining

---

curred "in the course of and resulting from" employment does not, *per se,* preclude tort liability for a co-employee who is not "acting in furtherance of the employer's business."   In the case before us we are concerned only with the possible tort immunity of a co-employee under *W. Va. Code*, 23–2–6a [1949], and not the employer.   Inasmuch as the record is replete with inconsistent factual assertions by both parties we find that the trial court did not err when it denied the appellant's motion for summary judgment and held that there remained genuine issues of fact to be resolved by a jury.   *See* Syl. pt. 2, *Clendenin Lumber and Supply Co. v. Carpenter,* 172 W.Va. 375, 305 S.E.2d 332 (1983); Syl. pt. 1, *Perlick & Co. v. Lakeview Creditor's Trustee Committee,* 171 W.Va. 195, 298 S.E.2d 228 (1982); Syl. pt. 3, *Aetna Casualty and Surety Co. v. Federal Insurance Company of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963).

Similarly, the trial court did not err when it denied the appellant's motions for directed verdicts in both trials and submitted both issues for consideration by the jury.   *See* Syl. pt. 2, *Hover-*

*male v. Berkeley Springs Moose Lodge No. 1483,* 165 W.Va. 689, 271 S.E.2d 335 (1980); Syl. pts. 1 and 2, *Jividen v. Legg,* 161 W.Va. 769, 245 S.E.2d 835 (1978); Syl. pts. 1–5, *Wager v. Sine,* 157 W.Va. 391, 201 S.E.2d 260 (1973).

5.   *W. Va. Code*, 23–2–6 [1974], extends immunity from tort liability to all subscribers in good standing with the worker's compensation fund when an employee's injury or death is compensable.

6.   *W. Va. Code*, 23–4–1 [1976], provides, in pertinent part:

Subject to the provisions and limitations elsewhere in this chapter set forth, the commissioner shall disburse the workmen's compensation fund to the employees of employers subject to this chapter, which employees have received personal injuries *in the course of* and resulting from their covered *employment* or to the dependents, if any, of such employees in case death has ensued.... (emphasis added).

whether injuries or death emanating from such "dual purpose" trips are in the course of employment for purposes of receiving worker's compensation benefits.

> The test in brief is this: If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own. (citation omitted). If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been cancelled upon failure of the private purpose though the business errand was undone, the travel is then personal, and personal the risk.

251 N.Y. at 93–94, 167 N.E. at 183. "We do not say that service to the employer must be the sole cause of the journey, but at least it must be a concurrent cause." *Id.* The court determined that the personal aspect of the helper's trip would have gone forward even though the business errand might have been cancelled, therefore, his dependents were not entitled to compensation.

A small minority of jurisdictions have interpreted the "dual purpose" doctrine as requiring the business aspect of the trip to be the dominant or primary purpose of the journey before an injury may be classified in the course of employment for purposes of worker's compensation. These jurisdictions engage in a "balancing" or "weighing" test. However, this view has been soundly criticized as not representative of the rule in *Marks' Dependents v. Gray, supra,* and contrary to the liberal construction of worker's compensation, generally. *See Cook v. Highway Casualty Co.,* 82 So.2d 679 (Fla.1955); *Downs v. Durbin Corp.,* 416 S.W.2d 242 (Mo.Ct.App.1967); *D & C Builders v. Cullinane,* 639 P.2d 544 (Nev.1982); 1 Larson, *supra* at § 18.13. At least one jurisdiction has rejected both views and holds "that the proper test should require only that the business nature of an excursion be bona fide." *Cullinane,* 639 P.2d at 546. This Court finds it very persuasive that such a large number of jurisdictions utilize the test in *Marks'*

*Dependents v. Gray* when solving the unimaginable problems generated by "dual purpose" journeys, and, "which, when *rightly understood and applied,* has never yet been improved upon." 1 Larson, *supra* at § 18.12. (emphasis in original).

Although we are not presented with the issue of whether injuries or death sustained during these trips are "in the course of" employment for purposes of receiving worker's compensation benefits, we find the test in *Marks' Dependents v. Gray* a useful tool for determining whether co-employees are "in furtherance of the employer's business" for purposes of tort immunity pursuant to *W.Va.Code,* 23–2–6a [1949]. Therefore, in the case of "dual purpose" trips, a co-employee will be entitled to immunity from tort liability if the journey can be characterized as a business trip under the guidelines of *Marks' Dependents v. Gray, supra.* On the other hand, no immunity will be available if, under the same guidelines, it is determined that the trip was personal.

■ Accordingly, we adopt the rule in *Marks' Dependents v. Gray, supra,* and hold that for purposes of determining whether a co-employee "is acting in furtherance of the employer's business" under *W.Va.Code,* 23–2–6a [1949], and thereby entitled to immunity from tort liability, a "dual purpose" trip, that is, a journey by an employee that serves both personal and business reasons, is a personal trip if it would have been made even though the business aspect of the journey was cancelled. However, it is a business trip if the journey would have gone forward even though the personal errand was cancelled. It must be noted that in the event the injury or death of an employee prevents the trip from going forward, the journey may still be a business trip if the business task would have been done by some other employee at some other time.

We must now determine whether the trial court correctly instructed the jury as to the proper application of the rule in *Marks' Dependents v. Gray, supra,* or whether, as the appellant contends, the jury was given

inconsistent and conflicting instructions. The challenged instruction, as contained in the charge to the jury in the first trial, reads as follows:

The Court instructs the jury that if you believe from the evidence that the business of Huntington Motor Sales, Company, Incorporated was secondary to personal and vacation plans of Don Smith and his wife and that the trip to Stuart, Florida would have gone forward even though there was no business purpose, then you may find Don Smith was not acting in the furtherance of his business at Huntington Motor Sales at the time Ernest Jenrett was injured. The Court instructs the jury that an individual in making a trip may have both business and personal reasons for making the trip and still be acting in accordance with the furtherance of his employer's business. It is not necessary that the business be the sole purpose for making the trip, so long as it is at least a concurrent reason. If it was necessary for the individual to make the trip in order to conduct business, he's in the course of his employment, therefore, if you find that Donald E. Smith needed to travel to Stuart, Florida to conduct company business, you may find he was acting in furtherance of his employer's business, even though he may also have had a personal purpose or reason for making the trip.[7]

■ The appellant argues that by including the word "secondary" in the above instruction, the trial court inconsistently instructed the jury using both the "balancing" test and the "concurrent cause" test of *Marks' Dependents v. Gray, supra.* Although the jury instruction is not a model of clarity, when read in its entirety, the instruction correctly informs the jury as to the proper application of the "concurrent cause" test. The charge's primary infirmity may lie in the obvious fact that it was not edited. Two instructions, one offered by each of the parties, were placed together without the necessary uniformity in the choice of words to describe the proper test

to be applied. However, such a lack of clarity in this case is not reversible error. *See* Syl. pt. 10, *State v. Richey,* 171 W.Va. 342, 298 S.E.2d 879 (1982); Syl. pt. 3, *Nesbitt v. Flaccus,* 149 W.Va. 65, 138 S.E.2d 859 (1964); Syl. pt. 1, *Frazier v. Grace Hospital, Inc.,* 117 W.Va. 330, 185 S.E. 415 (1936); Syl. pt. 3, *Hesson v. Penn Furniture Co.,* 70 W.Va. 141, 73 S.E. 302 (1911). Therefore, we hold that the trial court did not err when it instructed the jury during the first trial.

## II

The appellant further asserts that the trial court erred when it denied the appellant's motion for a new trial based upon alleged inflammatory remarks of the appellee's counsel during the opening and closing statements in both trials. Specifically, the appellant contends that the appellee's counsel made irrelevant and inflammatory remarks concerning the fact that one of the appellant's counsel was from Chicago, Illinois; that the appellant used his airplane for business purposes with resultant tax deductions to the corporation of Huntington Motors; and that the appellant's lawyers commenced an investigation of the accident the day after its occurrence. The appellee argues, on the other hand, that the comments complained of by the appellant were based upon facts and inferences in evidence before the jury, therefore, they were not improper.

■ This Court held in syllabus point 3 of *Crum v. Ward,* 146 W.Va. 421, 122 S.E.2d 18 (1961): "Though wide latitude is accorded counsel in arguments before a jury, such arguments may not be founded on facts not before the jury, or inferences which must arise from facts not before the jury."

■ Review of the record reveals that the comments of the appellee's counsel were not of sufficient magnitude to warrant reversal of the trial court. With respect to the mention of the residence of the

---

7. The questioned instruction is a combination of modified instructions offered by both parties to the trial court and presented to the jury in the form of a charge. Obvious typographical errors from the transcript have been corrected for the ease of the reader.

appellant's co-counsel, the record indicates that during his direct examination of the appellant, Donald Smith, the attorney himself informed the open court and the jury that he was from Chicago. In the context of the whole trial, the comments were harmless. *See* syl. pt. 1, *Leftwich v. Wesco Corp.,* 146 W.Va. 196, 119 S.E.2d 401 (1961).

■ Furthermore, the remarks surrounding the business tax practices of the appellant and the use of his airplane for business purposes were likewise not reversible error. It is clear to us that the appellee was attempting to convince the jury to look beyond the outward or superficial appearances of the trip when it deliberated on the true reason for the journey to Stuart, Florida in the first trial. During oral argument in this Court the appellee's counsel admitted that some of his remarks to the jury were of an intemperate nature. While we do not condone the use of words such as "rip-off" and "liar," such remarks do not warrant reversal of the trial court in this case. *See, e.g., Sears v. Rutishauser,* 117 Ill.App.3d 61, 72 Ill.Dec. 696, 453 N.E.2d 1 (1983); *Thorsen v. City of Chicago,* 74 Ill.App.3d 98, 30 Ill.Dec. 61, 392 N.E.2d 716 (1979). *But see Bowers v. Watkins Carolina Express, Inc.,* 259 S.C. 371, 192 S.E.2d 190 (1972); *Texas Employers' Insurance Association v. Jones,* 361 S.W.2d 725 (Tex.Civ.App.1962).

■ Finally, the comments regarding the appellant's investigation of the accident the day after its occurrence were related to the testimony of an airport employee who was present on the day of the accident and who made conflicting statements about events immediately preceding the severance of the appellee's arm. Therefore, the trial court did not err when it refused to grant the appellant's motion for a new trial.

**8.** This Court recognizes that the existence of the defense of assumption of risk and the definition of proximate cause are unsettled under our relatively new doctrine of comparative negligence as established by *Bradley v. Appalachian Power Co.,* 163 W.Va. 332, 256 S.E.2d 879 (1979).

### III

The appellant next asserts that the trial court in the second trial erred when it gave a certain instruction offered by the appellee and refused to give some instructions offered by the appellant. The appellant specifically contends that it was error for the trial court to refuse the appellant's proffered instructions on assumption of risk, open and obvious danger and proximate cause. The appellant further argues that the trial judge erroneously gave the jury the appellee's instruction on future earning capacity as an element of damages.

■ It is well settled in West Virginia that "[a]n instruction should not be given when there is no evidence tending to prove the theory upon which the instruction is based." Syl. pt. 4, *Hovermale v. Berkeley Springs Moose Lodge No. 1483,* 165 W.Va. 689, 271 S.E.2d 335 (1980). *See also* Syl. pt. 8, *State v. Hall,* 171 W.Va. 212, 298 S.E.2d 246 (1982); Syl. pt. 3, *State v. Starr,* 158 W.Va. 905, 216 S.E.2d 242 (1975); Syl. pt. 11, *Roush v. Johnson,* 139 W.Va. 607, 80 S.E.2d 857 (1954). Furthermore:

> "It is not error to refuse to give an instruction to the jury, though it states a correct and applicable principle of law, if the principle stated in the instruction refused is adequately covered by another instruction or other instructions given." Syl. pt. 2, *Jennings v. Smith,* 165 W.Va. 791, 272 S.E.2d 229 (1980), *quoting,* syl. pt. 3, *Morgan v. Price,* 151 W.Va. 158, 150 S.E.2d 897 (1966).

Syl. pt. 2, *McAllister v. Weirton Hospital Co.,* 173 W.Va. 75, 312 S.E.2d 738 (1983).

■ Upon review of the record, the trial court did not err when it refused the appellant's instructions on assumption of risk and open and obvious danger inasmuch as they were not supported by sufficient evidence in the record.[8] In addition, the appellant's proximate cause instruction was properly refused because the concept was "adequately covered" by other instructions contained in the charge to the jury.

However, the parties have not presented these issues to us in a comparative negligence context. The arguments by both parties with respect to the above challenged instructions revolve around whether they are supported by the evidence admitted at trial.

With respect to the instruction on damages, the appellant contends that the trial court improperly instructed the jury that it could consider impairment of future earning capacity as an element of damages when such an instruction was not supported by the evidence. The appellant argues that these future damages were not proven by the appellee to a reasonable degree of certainty as required by *Jordan v. Bero*, 158 W.Va. 28, 210 S.E.2d 618 (1974), therefore, it should not have been given.[9]

An instruction is proper if it is a correct statement of the law and if there is sufficient evidence offered at trial to support it. *State v. Hall*, 171 W.Va. 212, 298 S.E.2d 246 (1982). *See also* Syl. pt. 1, *King v. Bittinger*, 160 W.Va. 129, 231 S.E.2d 239 (1976). We hold that the challenged instruction was a correct statement of the law and the appellee introduced sufficient evidence to warrant such an instruction. At trial, the appellee introduced an expert, Dr. Kenneth Manges, who testified about the appellee's vocational and psychological impairment. In addition, as the appellee notes, the jury was otherwise instructed that they could only award damages for future loss of earnings to the extent that they believed the appellee could not work. The trial court did not err in this regard.

### IV

The appellant's final assignment of error deals with the order in which the evidence was introduced during the first trial. The appellant asserts that the trial court erred when it allowed the appellee to open and close the immunity trial but instructed the jury that the appellant had the burden of persuasion on the issue.

"As a general rule the order of introducing testimony during a trial rests within the sound discretion of the trial court, and a departure from the usual order of introduction of evidence does not constitute error unless it amounts to an abuse of discretion." Syl. pt. 2, *Allegheny Development Corp., Inc. v. Barati*, 166 W.Va. 218, 273 S.E.2d 384 (1980). *See also* Syl. pt. 9, *Edmiston v. Wilson*, 146 W.Va. 511, 120 S.E.2d 491 (1961).

We do not find that the trial court abused its discretion when it permitted the appellee to open and close the immunity trial. The appellant has not demonstrated that he was prejudiced by the order in which the evidence was presented to the jury. Although "[g]enerally the party having the burden of proof should open and close," *Allegheny Development Corp. Inc. v. Barati, supra*, 166 W.Va. at 223, 273 S.E.2d at 387, we hold that the trial court did not err in this respect.

For the foregoing reasons, the judgment of the Circuit Court of Cabell County is hereby affirmed.

Affirmed.

---

9. In *Jordan v. Bero, supra,* we held in syllabus point 7 as follows:

To form a legal basis for recovery of future permanent consequences of the negligent infliction of a personal injury, it must appear with reasonable certainty that such consequences will result from the injury; contingent or merely possible future injurious effects are too remote and speculative to support a lawful recovery.

In addition, "[t]he permanency or future effect of any injury must be proven with reasonable certainty in order to permit a jury to award an injured party future damages." Syl. pt. 9, *Jordan v. Bero, supra. See also Ilosky v. Michelin Tire Corp.,* 172 W.Va. 435, 307 S.E.2d 603 (1983); *Flannery v. United States,* 171 W.Va. 27, 297 S.E.2d 433 (1982).