412 S.E.2d 519

**Holmes R. "Butch" SHAVER and Sharon Shaver Klopp, Plaintiffs Below, Appellees**

v.

**Glenn MEMEL, Joe Memel, Carl "Butch" Memel, Nancy Memel, Defendants Below, Appellants,**

**and**

**Jay Memel, Defendant Below, Appellee,**

**and**

**Robert K. Tebay, Jr., and Robert K. Tebay, III, Defendant Below, Appellees.**

**No. 19957.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 17, 1991.

Decided Dec. 13, 1991.

Eugene T. Hague, Jr., Patrick McFarland, Redmond, McFarland & Hague, Parkersburg, for appellees.

Larry N. Sullivan, Parkersburg, for Jay Memel.

C. Darren Tallman, Parkersburg, for appellants.

George E. Lantz, Parkersburg, for Robert K. Tebay, Jr., and Robert K. Tebay, III.

PER CURIAM:

This is an appeal by Glenn Memel, Joe Memel, Carl "Butch" Memel, and Nancy Memel from a judgment order of the Circuit Court of Wood County, entered on December 13, 1989, which reflected a jury verdict adverse to the appellants. The appellants, four of the five natural children of Mr. Carl Memel, deceased, contend that the jury verdict of December 7, 1989, finding that Mr. Memel did not have the necessary testamentary capacity when he executed his last will and testament, was unsupported by the evidence. We disagree with the contentions of the appellants, find no reversible error, and affirm the decision of the Circuit Court of Wood County.

I.

Mr. Carl Memel died on April 28, 1989. Survivors included five natural children, four of whom are the appellants, and two step-children, the appellees Holmes R. "Butch" Shaver and Sharon Shaver Klopp. Mr. Memel's wife, Annie, had predeceased him in May 1988. Mr. Memel's other natural child, Jay Memel, is an appellee in this action.

Mr. Memel executed a will on September 16, 1988, which devised his entire estate to his five natural children and one of his two step-children, Sharon Shaver Klopp. Mr. Memel had also executed an earlier will on June 23, 1986, which directed that his entire estate should be devised to his two step-children and one of his sons, appellee Jay Memel, if his wife Annie predeceased him. His remaining four children, the appellants, were expressly disinherited in the 1986 will.[1]

This action was initiated by appellees Mr. Shaver and Mrs. Klopp on May 25, 1989, in order to ascertain whether Mr. Memel, allegedly suffering from Alzheimer's disease, possessed the necessary testamentary capacity when he executed the 1988 will.[2] During a pretrial conference held on November 17, 1989, the parties stipulated that the 1986 will was at the time of its execution valid in all respects. A jury trial was conducted on December 5, 6, and 7, 1989. The proponents of the 1988 will, the four appellants, began the trial by calling witnesses who testified concerning Mr. Memel's mental capacities at the time of the execution of the 1988 will. Testimony was introduced through two nephews, Charles Thomas Halfhill and Albert William Halfhill; two attesting witnesses, Robert Eddy and Alfred Dye; Mr. Memel's housekeeper from August 1988 through April 1989, Norma Wright; another housekeeper, Mary Griffith; and the attorney who prepared the 1988 will, Robert Full.

Charles Thomas "Tom" Halfhill and Albert William "Bill" Halfhill were Mr. Memel's nephews. They testified that Mr. Memel often expressed to them a desire to change his will. Tom Halfhill accompanied Mr. Memel to the bank to examine the 1986 will prior to the execution of the 1988 will, and Mr. Halfhill testified that Mr. Memel thereafter expressed a strong desire to

change his will. Bill Halfhill's son, Steve, an attorney, scheduled a meeting between Mr. Memel and Steve's former law school classmate, attorney Robert Full. On September 16, 1988, Mr. Memel went to Mr. Full's office to discuss the preparation of the new will. Alfred Dye and Robert Eddy, friends of Mr. Memel, testified that they attended a retirement luncheon with Mr. Memel the morning the will was signed and later witnessed the signing of the will at Mr. Full's office. Janet Memel, the wife of appellant Joe Memel, had driven Mr. Memel to the attorney's office.

Both witnesses to the signing of the will, Mr. Dye and Mr. Eddy, testified that Mr. Memel appeared to understand the matters involved in making his will and actively participated in the process. Norma Wright, Mr. Memel's housekeeper at the time of the execution of the 1988 will, testified that Mr. Memel had discussed changing his will with her and also testified that she arrived at Mr. Memel's home following the signing of the will to find Mr. Memel sitting with his hand on the will. He commented to her about the will, explaining that he had gotten "everything taken care of and this is very important." Mrs. Wright also explained that Mr. Memel mentioned the will the following day and told her that he had to find a place to put it.

Robert Full, the attorney who prepared the will, testified concerning his contact with Mr. Memel. Mr. Full explained that he had initially been contacted by Steve Halfhill and had been told by Mr. Halfhill that Mr. Memel wished to change his will. Mr. Halfhill also explained that two old friends of Mr. Memel would serve as witnesses to the will. An appointment was then scheduled for later that week. Mr. Full testified that he and Mr. Memel dis-

---

1. The 1986 will, in disinheriting the four natural children who are the appellants in this action, stated the following: "I have specifically and deliberately left nothing to my sons, Glenn Memel, Joe Memel and Carl 'Butch' Memel, and my daughter Nancy Memel. I do this not out of lack of love or affection for them, but for the reason of their limited contact with me over the last 30 years."

2. The two co-executors named in this action, Robert K. Tebay, Jr., and Robert K. Tebay, III, do not have an adversarial role in this litigation because they are named as co-executors in both the 1986 and 1988 wills.

cussed the 1986 will and the changes desired for the formulation of the 1988 will.

The contestants of the will, appellees Mr. Shaver and Mrs. Klopp, thereafter introduced the testimony of various individuals and physicians regarding Mr. Memel's testamentary capacity at the time the 1988 will was executed. These witnesses included the decedent's treating physician, Dr. David Avery; a trust officer who had assisted Mr. Memel in his financial affairs, Randall Law; Mr. Memel's housekeeper from 1969 to August 1988, Vera Morehead; Co-executors Robert K. Tebay, Jr. and Robert K. Tebay, III; former Chairman of the Board of the Bank of Lubeck, Pat Ferrell; Mr. Memel's housekeeper in May 1988, Linda Harrach; a friend who observed Mr. Memel on the day he signed the 1988 will, James McAtee; and Mr. Memel's treating physician at the time he signed the 1988 will, Dr. Paul Allen Brooks, Jr.

Both Dr. Avery and Dr. Brooks testified that Mr. Memel lacked the requisite capacity to make a will on September 16, 1988. The appellants challenge the testimony of Dr. Avery on the grounds that he did not actually examine Mr. Memel until six months after the execution of the 1988 will. Dr. Avery, however, had reviewed Mr. Memel's extensive medical history in conjunction with his treatment of Mr. Memel and had concluded that Mr. Memel's mental incapacity was already quite severe in September 1988. Moreover, Dr. Avery quoted an April 6, 1987, report from records of the Cleveland Clinic regarding Mr. Memel's capacity as follows: "He appears to be in a state of progressive loss of memory and function over the past one year. Currently he is disoriented for time and place. He currently thinks this is February 1976." Dr. Avery testified that the Cleveland Clinic's findings were consistent with his own, explaining that Mr. Memel was unable to respond coherently to questions regarding medical history. Mr. Memel was able to communicate and give answers, but those answers would change from minute to minute. Dr. Avery diagnosed Mr. Memel as being in a fairly severe state of Alzheimer's disease, a neurological degeneration of an individual's thought processes. Dr. Avery testified that the Alzheimer's disease rendered Mr. Memel incapable of rationally thinking or making judgments. Dr. Avery further explained that patients suffering from Alzheimer's disease are typically affected over a period of several years and that the onset of the disease is extremely gradual. Consequently, Dr. Avery opined that Mr. Memel's thought processes and general condition would not have been much different in September 1988 than in March 1989 when Dr. Avery examined Mr. Memel.

Dr. Paul Brooks was Mr. Memel's treating physician at the time of the execution of the 1988 will. Dr. Brooks testified that he examined Mr. Memel in March 1988, June 1988, July 1988, August 1988, October 1988, November 1988, January 1989, and February 1989. Dr. Brooks described Mr. Memel as "totally incapacitated" during those visits and expressed an opinion that Mr. Memel did not have the ability to recall the property of which he would dispose in his will or understand the nature of the business of making a will in September 1988.

James McAtee, a family friend, visited Mr. Memel at his home immediately after Mr. Memel signed the 1988 will. Mr. McAtee testified that Mr. Memel was disoriented and asked Mr. McAtee what all those people were doing on his back porch. In reality, only the housekeeper was on the back porch. A few moments later, Mr. Memel told Mr. McAtee that he was going home. Mr. Memel then proceeded out of his own barn, across a large field, and headed toward a housing development.

Mrs. Vera Morehead, Mr. Memel's housekeeper for approximately nineteen years, also testified regarding Mr. Memel's mental incapacities.[3] Mrs. Morehead explained that Mr. Memel would lose his keys on a

---

**3.** It should be noted that Mrs. Morehead was included in the 1986 will and was to be given $10,000 if she was still acting as Mr. Memel's housekeeper at the time of his death. However, Mrs. Morehead had resigned prior to Mr. Memel's death and is therefore not entitled to anything under either will.

daily basis and would throw away social security checks, stock certificates, and retirement checks. Mrs. Morehead resigned from her employment as Mr. Memel's housekeeper because Mr. Memel required full-time care and because Mrs. Morehead feared that Mr. Memel would shoot her with guns he kept in his drawer. Mrs. Morehead further testified that she had seen Glenn Memel on only four or five occasions in the nineteen years she worked for Mr. Memel, had met Joe Memel for the first time at Mr. Memel's funeral, and saw Nancy Memel for the first time at trial.

Mr. Randall Law, the Senior Trust Officer at Commercial Banking and Trust Company of Parkersburg, testified that a money management trust had been established for Mr. Memel. The establishment of the trust had been recommended by Dr. Paul Brooks and Mr. Robert Tebay, III, Mr. Memel's attorney. The trust was established on March 4, 1988. Mr. Law testified that Mr. Memel was unable to carry on any meaningful dialogue during their conversations. Mr. Law also testified that Mr. Memel asked no questions about the trust and exhibited no concerns about his assets. When Mr. Memel would inquire about having enough cash, Mr. Law would open Mr. Memel's billfold to find four to five hundred dollars in cash.

After hearing all the evidence, the jury returned the following verdict on December 7, 1989: "We, the jury, find by a preponderance of the evidence that Carl D. Memel was not of sound mind on September 15, 1988, and thereby did not have the required mental capacity to write his last will and testament."

## II.

The appellants first contend that the lower court erred by failing to instruct the jury that the testimony of the lawyer who prepared the will and the attesting witnesses was entitled to particular weight. Although not specified by the appellants, this assignment of error appears to be predicated upon the appellants' offer and the lower court's refusal of two jury instructions which would have assigned greater weight to the individuals who witnessed the actual execution of the will.

We have previously approved of the type of instruction requested by the appellants in the following cases: *Frye v. Norton,* 148 W.Va. 500, 135 S.E.2d 603 (1964); *Stewart v. Lyons,* 54 W.Va. 665, 47 S.E. 442 (1904); and *Kerr v. Lunsford,* 31 W.Va. 659, 8 S.E. 493 (1888). However, we have never stated that it is error not to give such an instruction.

In support of their position, the appellants suggest that the lower court did not explain that the crucial period in which Mr. Memel's mental capacity was to be evaluated was at the time of the execution of the will. In reality, however, the trial judge made six separate references to the "time of the execution of the will." Additionally, the jury was given proper instruction on the method of evaluating and assigning appropriate weight to each witness' testimony.

We have previously stated that " ' "It is not error to refuse to give an instruction to the jury, though it states a correct and applicable principle of law, if the principle stated in the instruction refused is adequately covered by another instruction or other instructions given." Syl. pt. 2, *Jennings v. Smith,* 165 W.Va. 791, 272 S.E.2d 229 (1980), *quoting* syl. pt. 3, *Morgan v. Price,* 151 W.Va. 158, 150 S.E.2d 897 (1966). Syl. pt. 2, *McAllister v. Weirton Hospital Co.,* [173] W.Va. [75], 312 S.E.2d 738 (1983).' Syllabus Point 4, *Jenrett v. Smith,* [173] W.Va. [325], 315 S.E.2d 583 (1983)." Syl. Pt. 9, *State v. Deskins,* 181 W.Va. 112, 380 S.E.2d 676 (1989). Thus, if one instruction adequately covers an issue, the lower court may properly refuse a second instruction which would not furnish any additional aid to the jury in reaching a proper verdict. In determining whether a trial court committed error by refusing a requested instruction, this Court will review the jury instructions as a whole. *See Roberts v. Stevens Clinic Hosp., Inc.,* 176 W.Va. 492, 345 S.E.2d 791 (1986).

Furthermore, while it is the duty of the lower court to sufficiently instruct the jury on the relevance of certain matters to be decided, it is also imperative that the lower court refrain from unnecessarily influencing the jury on the weight to be given to particular witnesses or certain issues. *See Browning v. Hoffman,* 90 W.Va. 568, 111 S.E. 492 (1922).

In their second assignment of error, the appellants contend that the lower court erred by failing to instruct the jury that it requires less mental function to execute a will than a deed. The appellants have taken that language from previous opinions of this Court which have dealt with testamentary capacity. *See Kerr,* 31 W.Va. at 679, 8 S.E. at 503. We do not deny that such statement is accurate. However, it is not indispensable that this language be included as a jury instruction in every case challenging the capacity of a testator. This is especially true where the appellants did not even request such an instruction. Furthermore, the jury was more than adequately instructed on the nature of the quality of mind necessary in the jury instruction which follows:

> It is not necessary that a person should possess the highest qualities of mind in order to make a will, nor that he should have the same strength of mind he may formerly have had; the mind may be enfeebled, the understanding may be weak, the character may be eccentric, and he may even lack capacity to transact business affairs of life.

Again, the language employed in the above-quoted jury instruction adequately conveys the message the appellants wish to communicate. We find no error by the lower court in failing to instruct the jury with the specific language now requested by the appellants.

The appellants next contend simply that the jury's verdict was contrary to the evidence presented below. After a thorough review of the record, portions of which have been summarized in this opinion, we find no merit to the appellants' contention in this regard. The jury most certainly could have concluded, given the extensive evidence of incapacity presented below, that the testator lacked the requisite testamentary capacity to execute a will on September 16, 1988.

The appellants also contend that the lower court erred by allowing testimony regarding "certain acts of the testator that were too remote in time and not relevant to the date." This assignment of error is apparently directed primarily toward the introduction of the testimony of Dr. David Avery who treated Mr. Memel for the first time six months after the execution of the 1988 will. We discussed the bases for Dr. Avery's opinion in an earlier portion of this opinion and reiterate here that Dr. Avery's medical opinion was well based in fact and previous medical record. West Virginia Rule of Evidence 702 provides the following: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion of otherwise." *See also* Syl. Pt. 3, *Ventura v. Winegardner,* 178 W.Va. 82, 357 S.E.2d 764 (1987). We believe that Dr. Avery's explanation of Mr. Memel's thought capacity and Alzheimer's disease was helpful to the jury, and we conclude accordingly that its introduction was not in error.

Moreover, the appellants did not object to the introduction of the testimony of Dr. Avery at trial and therefore have not provided themselves with an appropriate basis upon which to complain on appeal. *See* W.Va.R.Evid. 103(a)(1). Furthermore, the appellants offered no medical expert testimony to challenge Dr. Avery's medical opinions.

In their final assignment of error, the appellants complain that the lower court erred by "forcing the appellants to go forward with their entire case and to not instruct the jury on the presumption of sanity." We also find this argument unconvincing. The appellants contend that they were placed in "the awkward position" of proceeding with evidence on the

issue of testamentary capacity and with contesting the issue of undue influence. The appellants also claim that the lower court did not properly acknowledge their position that the burden of proving undue influence was on the appellees. That contention is of little consequence at this juncture since the jury never reached the issue of undue influence. The jury found that Mr. Memel lacked the necessary testamentary capacity to make a will on September 16, 1988. Therefore, the will became invalid upon that determination, and the remaining issue of undue influence never had to be addressed. Consequently, it is untenable for the appellants to argue that they were prejudiced by any perceived irregularity in the manner in which that issue was presented.

Based on the foregoing, we conclude that there was no reversible error in this case, and we therefore affirm the decision of the Circuit Court of Wood County.

Affirmed.